Harold K. **KELLEY**, Appellant,

v.

**SOUTHERN PACIFIC COMPANY,**
Appellee.

No. 5906.

Court of Civil Appeals of Texas.

El Paso.

June 5, 1968.

Gerald Smith and Philip Cole, El Paso, for appellant.

Kemp, Smith, White, Duncan & Hammond, El Paso, W. A. Gregory, San Francisco, Cal., for appellee.

## OPINION

FRASER, Chief Justice.

This case is on appeal from the District Court of El Paso County, Texas, and is a suit brought by the appellant, who was plaintiff in the court below, to recover damages from the appellee alleging that appellee had breached a written contract of employment by discharging appellant wrongfully and without just cause. Appellant was a former chair car porter or "train porter" employed by the appellee railroad. Appellee moved the District Court to dismiss the action contending that the matter is within the exclusive jurisdiction of the National Railroad Adjustment Board. Appellee also filed its motion for summary judgment. The District Court denied the motion to dismiss and granted summary judgment to appellee. In its brief appellee takes the position that appellant has not complied with the conditions of the contract upon which he sues; that he authorized his Union to handle the case under the collective bargaining agreement; that said Union commenced such handling; that later on the Union changed his claim from a charge to a request for leniency and abandoned any claim for wrongful discharge authorized under the contract; and that in any event the contract of employment was partly oral, thereby making it unenforcible by virtue of the Texas 2-year statute of limitations for oral agreements. After considering this matter and the authorities cited, we are of the opinion that the trial court was correct in its judgment, as will appear in the remainder of this opinion.

■ First, we will take up appellee's point of error in which it states that the trial court erred in denying appellee's motion to dismiss the action for lack of jurisdiction over the subject matter. The authorities urged in support of this point are of a

very recent origin, and it appears that appellant's case was already on file and had been or was in the process of trial when the said authorities became effective. Therefore we think the court was correct in assuming jurisdiction as it obviously did.

Appellant argues two points of error, the first worded as follows:

"Since the trial court had jurisdiction and appellant's and appellee's affidavits and exhibits showed a genuine issue as to the material facts and showed that the contract was written, the court erred in granting judgment for appellee after considering appellee's second amended motion to dismiss for lack of jurisdiction, Motion for Summary Judgment and appellee's Plea of Limitations."

As pointed out in appellee's brief, there existed a collective bargaining agreement establishing the rates of pay, rules, and working conditions for various crafts of employees, including train porters. In this agreement the dismissal clause reads as follows:

"Train porters will not be disciplined or dismissed without just cause. If any porter believes that he has been unjustly disciplined or dismissed, he will have the right to file with the Superintendent within ten days after notice of such discipline, a written statement of his case and on his request, the case will be investigated by the proper official. In case the decision is unsatisfactory, appeal may be taken within ten days to the higher officers of the Company."

It seems clear that appellant did not forward his first communication to the Superintendent within ten days, as set forth in the paragraph above. It is stated in the affidavit of William K. Hall, who described himself as First Assistant Manager of Personnel, that the letter received was from Mr. Clyde Lewis, General Chairman, Local #12, Brotherhood of Sleeping Car Porters; that such letter was dated May 12, 1962,

postmarked May 14, 1962, and received on May 16, 1962. Therefore this letter was received and filed at least some 16 days after appellant had received his notice of dismissal on April 27, 1962. The letter alleged that appellant was not guilty of violating company Rule 802 and requested that the notice of dismissal be rescinded, and demanded a formal investigation under the above agreement clause. The Superintendent, on May 22, 1962, replied to this letter and declined the request on the basis that no written statement or request had been filed in behalf of appellant within the 10-day period. Appellee further sets out that General Chairman Clyde Lewis replied to the Superintendent's above letter on June 12, 1962, and it is alleged that in this letter or reply no contention was made that the Company's position was incorrect. Instead, the Union requested that the matter of appellant's discharge be handled on a leniency basis. There were other various communications between the appellee and the Union, and in the last one, dated February 20, 1964, General Chairman Lewis stated:

"Realizing that in the past we have had discussions on the case of train porter H. K. Kelley I am again asking that you grant me the privilege of meeting with you to discuss this case further on a basis of leniency. Kelley has now realized the grave mistake he has made."

This, of course, is an abandonment of appellant's claim of grievance and is an admission of wrongdoing with a plea for leniency. Such action disposes of all grievance claims. The appellant filed affidavits stating that from the time he had written his first letter to Mr. Lewis asking the Union to intervene in his behalf until he was advised that the Union was dropping his case, he relied on the Union to take whatever steps were necessary to protect his rights and secure any available relief. He further declares that he was advised October 25, 1962 by Mr. Lewis that he was dropping Mr. Kelley's case.

It is apparent that the agreement does not specify particular causes for which a train porter may be dismissed, only requiring that the dismissal be for a just cause. Again it is clearly apparent that if the dismissed employee wishes to take issue on the ground that his dismissal was unjust, he must notify the employer within the 10-day period and, if he does so, his dismissal is suspended pending development of the facts. This arrangement is obviously for the purpose of developing the facts so that proper action can be taken, and therefore no grievance can exist until a decision is made. Further, it is clear that if the employer declines the employee's claim, he has the right to appeal to a higher officer under the next successive provisions of the agreement. It is asserted by the appellee that the said investigation or hearing procedure provided in the agreement is contractual, and is not controlled by the Railway Labor Act. It is obvious here that the conditions so far discussed relative to grievance appeals were not fulfilled by the appellant. Butler v. Thompson, 192 F.2d 831 (8th Cir. 1951); Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558; Barker v. Southern Pacific Co., 214 F.2d 918 (1954). Therefore, it seems that we have no choice but to hold that no cause of action could be asserted by Mr. Kelley because of the absence of a timely complaint by him under the collective bargaining agreement and his election of remedy by asking for leniency.

Appellee further points out that neither appellant nor anyone in his behalf took any appeal to the higher officers of the employer from the action of the Superintendent dated April 27, 1962, or from the Superintendent's letter of May 22, 1962, within the prescribed 10-day period. It has been held that, except where there is a contract limiting the common law rights of the employer, a railroad employer, like any other, may discharge or discipline an employee at will. This fact makes it essential to apply the terms of the collective bargaining agreement to the facts as they exist. We will not further discuss appellant's failure to file an appeal within the 10-day period. It is obvious that the agreement requires that this be done. In answer to appellee's testimony, appellant contends that he did not know of the various 10-day conditions in the agreement; but we cannot hold that such is good cause, as an agreement such as this is binding upon both parties regardless of the extent of their personal knowledge or ratification. The Union representing appellant was a signatory to the aforesaid collective bargaining agreement. It has been held that a collective agreement, such as here cited and relied upon by appellant, is binding upon the individual employee irrespective of his personal knowledge or ratification. Case v. Labor Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762; Crockett v. Union Terminal Company, 342 S.W.2d 129 (n. w. h.); Breeland v. Southern Pacific Company, 231 F.2d 576. This being true, even though appellant had elected to ask for leniency, it appears desirable to discuss the terms of said collective bargaining agreement as they apply to the facts. It will be noted that appellant was notified of his dismissal by letter of April 27, 1962, and it is our belief that he then had the right, and the obligation as well, under the said agreement to express any objection he might have to the Superintendent in writing within the ensuing 10-day period. It is alleged by appellee that the Union and the railroad agreed that the word "may" in the clause is used and applied to mean "must", citing in support thereof the construction given by the parties to the agreement as evidenced in the record. Further, appellee cites Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, wherein the Supreme Court makes the following statement: "Courts rightfully assume that the parties to a contract are in the best position to know what was intended by the language employed." Also, with regard to the facts herein applicable, it must be recalled that appellant not only failed to file his request for investigation within ten days, but also failed to appeal the matter to higher authorities within the 10-day period set forth in the agreement.

It appears that recent authorities in Texas conform with the general rule in other states and with the Federal labor law in requiring plaintiffs in suits against railroads, for damages allegedly arising out of wrongful discharge, to show that they have complied with the conditions of the contracts under which they seek to recover. Crockett v. Union Terminal Company (supra) and cases cited therein. Appellant maintains that state law determines how the administrative remedies in the contract must be observed and that Texas law does not require exhaustion of available remedies as a prerequisite to an action at law. It is not believed that the cases cited by appellant in support of his position are adequate or in point; as, for example, he relies heavily on Texas & New Orleans R. Co. v. McCombs, 143 Tex. 257, 183 S.W.2d 716, but this case involves a situation where a telegrapher sued for overtime but did not seek damages for wrongful discharge, as does the plaintiff here. This case cites many other cases. However, in the above case the court pointed out that the procedure involved in that agreement was permissive and not mandatory, and the employee did not have to request a hearing if he did not desire to do so. As we have pointed out above, it appears to be agreed and understood between the Union and the railroad in this case that the employee must request a hearing, this being based on the construction of the word "may" as actually meaning "must" in the agreement. Again we cite Crockett v. Union Terminal Company, supra. It is our belief and holding that appellant cannot maintain a cause of action for breach of contract in this court when he has failed to perform the conditions required of him thereunder. Summary judgments in cases like the one before us have been rendered for failure to comply with the time limit conditions in collective bargaining agreements upon which the lawsuits were predicated. Barker v. Southern Pacific Company (supra), and Breeland v. Southern Pacific Company (supra). Further developing its reply point No. 1, appellee points out that following his dismissal from service, the appellant elected to seek reinstatement by initiating a grievance claim; and, when his request was declined (because it was not presented within the 10-day limit), he converted his claim from reinstatement as a matter of right to reinstatement on a leniency basis. Appellee maintains that appellant cannot invoke one procedure, abandon it, and then repudiate his election of remedies by bringing action in court for wrongful discharge. In other words, he cannot do both. A similar situation is found in International Assn. of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67. The airline company asserted that the discharged employees were bound by their presentations of grievances through the contract procedures; that they had abandoned same in midstream and hence the last decision on appeal had become final, and that they were without standing in the courts and the relief prayed for was foreclosed. In other words, the court agreed that an election of remedies had taken place, and affirmed judgment in favor of the airlines. This case originated in Texas. See also Matlock v. Gulf C. & S. F. Ry. Co., 99 S.W.2d 1056, and Cook v. Missouri Pacific Railroad Company (5th Cir. 1959), 263 F.2d 954 (cert. den.), 361 U.S. 866, 80 S.Ct. 120, 4 L.Ed.2d 104. In the last cited case the court states:

".This decision, portentous as it is, still respects the line which Moore and Slocum drew: has the employee accepted as final the termination of the relationship of employer-employee? Or is the employee seeking to continue his status as an employee? If it is the former, the remedy of damages in a court of law is the right of the employee. * * *

"He may, of course, waive that right by proceeding voluntarily on the administrative route. That election binds him."

Appellee maintains that where it is undisputed that appellant and his Union changed his claim from a charge that appellee violated the agreement, to a request for a

leniency without pay for time lost, the trial court did not err in granting judgment for appellee. It is apparent from the record that appellant left the entire matter up to his Union, Brotherhood of Sleeping Car Porters, and that such Union abandoned any contention that the appellee had violated the agreement in dismissing him. Instead the Union, beginning with its letter of June 12, 1962, repeatedly sought leniency and made no reference to any lack of responsibility of appellant for the rule violation or of any error committed by the company. We think it well to note here, again, the letter written by the Union chairman, Mr. Lewis, which we have heretofore quoted and in which he asks the privilege of meeting with the officials of the employer to discuss Mr. Kelley's case on the basis of leniency. The National Mediation Board, under the Railway Labor Act (45 U.S.C., Sec. 151–163), illustrates the difference in its rules for handling representation disputes (Title 29, Code of Federal Regulations, Chap. X, par. 1206.6) as follows:

"Dismissed employees whose requests for reinstatement account of wrongful dismissal are pending before proper authorities, which includes the National Railroad Adjustment Board or other appropriate adjustment board, are eligible to participate in elections among the craft or class of employees in which they are employed at time of dismissal. This does not include dismissed employees whose guilt has been determined, and who are seeking reinstatement on a leniency basis."

In Poe v. Southern Pacific Co., Civil No. 1105, D.Nev., this matter is taken up by the United States District Court for the District of Nevada, the court holding that a request for leniency in the application of said agreement constitutes an admission of guilt of the offense charged, and abandonment of all claims to reinstatement as a matter of right under the agreement. Examination of this case indicates that the railroad and its locomotive engineers, represented by the General Committee of Adjustment, Broth-erhood of Locomotive Engineers, entered into a collective bargaining agreement similar, if not identical, to the one before this court.

As stated above, appellant in his first point maintains that the contract was written, and therefore the 2-year statute of limitations did not apply. Appellee contests this position and statement. Appellee contends that the record shows by various affidavits, etc., that appellant first talked to a Mr. Cook, Chief Clerk of appellee, and that Mr. Cook explained the rate of pay and the duties of the position of chair car porter, and gave him an application which appellant filled out at home, returned to the office and signed. This application consisted of information relating applicant's personal history, education, etc., matters of information which are obtained for the purpose of determining the qualifications of the prospective employee. This document or application provides that before an applicant can be considered an accepted employee, the written approval of the proper officer must be obtained. It is not contested that such approval appears on the application. This application does not contain any reference to rates of pay or working conditions, etc. Such matters are contained in the collective bargaining agreement between appellee-railroad and the employees represented by the Brotherhood of Sleeping Car Porters. Appellee asserts that there can be no individual agreement between appellee and appellant that is in any way at variance with the provisions of the collective bargaining agreement. This statement does not appear to be contested.

■ It is elementary that in Texas law, actions for debt must be commenced within two years unless in writing, and if in writing the litigant is allowed four years within which to file his action. Appellant contends that his contract of employment was in writing and that he was therefore not barred by the 2-year statute of limitations, but that the 4-year statute of limitations was applicable. He takes the

position that his written application for employment approved in writing, when taken together with the Union contract (or, as we have been describing it, the collective bargaining agreement) between the Union and the appellee, constitutes a written contract of employment. Examination of the documents and the record as a whole convinces us that the collective bargaining agreement is an agreement between the Union and appellee and deals with standard of rates of pay and working conditions agreed upon by the Union and the appellee under the Railway Labor Act. Therefore, it is not an individual employment contract between the appellant and appellee, and as a matter of fact it is clear that it is an agreement between the Union and the appellee to put into effect various provisions of the Railway Labor Act, etc.

An affidavit executed by a Mr. Marvin Bell states that he was train master at El Paso, Texas in the year 1942, which was the year that appellant was employed, and that one of his duties was to employ personnel for the Texas and New Orleans Railway Company (which was later merged into the Southern Pacific Company). He stated that he explained appellant's duties to him in an interview in Mr. Bell's office; that he also advised appellant what the rate of pay would be, the rules and practices of the company which he would be required to observe, the benefits which would be afforded to appellant as a part of employment, including hospitalization, transportation privileges and retirement benefits. He states that he also informed appellant that he would have to obtain and wear the prescribed uniform and that appellant would be under the direct supervision of the conductor of his train. Mr. Bell then went on to say in his affidavit that "Mr. Kelley expressed his agreement to me orally that he accepted employment on the basis outlined above". Mr. Bell also states that at that time and place, under those conditions, appellant became an employee of the appellee company subject to his demonstration to the company that his past work record, references, physical condition and educational record were satisfactory; and after that he successfully completed the required student trips. Mr. Bell makes the statement in his affidavit that he personally employed appellant on November 27, 1942 subject to the above provisions. Mr. Bell then further states that no written documents were prepared or executed containing any of the foregoing matters as of the time of the employment of Mr. Kelley. Because of the wording of Mr. Bell's affidavit, we have searched the record and do not find any other or subsequent documents relating to the matters affecting the employment of Mr. Kelley as discussed between Mr. Bell and Mr. Kelley. Mr. Bell's affidavit was submitted by appellee in support of its motion for summary judgment.

It appears from the record, then, that this contract of employment was partially oral and partially written, and consisted of the application by Mr. Kelley and the approval by appellee, and the oral agreement between Mr. Kelley and Mr. Bell relating to matters set forth above by Mr. Bell. It is well established in the State of Texas that actions for debt, as set forth above in the reference to the statute of limitations, are synonymous to actions for damages. We therefore have an agreement partially oral and partially written, which leave such agreement subject to the pains and penalties of the Texas 2-year statute of limitations.

Appellant maintains that the collective bargaining agreement and the application and approval constitute a written contract placing him under the 4-year provision of the limitations statute. We do not believe the collective bargaining agreement is or could be asserted as any part of appellant's personal contract of employment with appellee. The collective bargaining agreement is a Union agreement applying to all employees in the prescribed category. Various courts have passed on this matter and have held that collective bargaining agreements between the railroad and the Union are regulatory and are not in them-

**590**

selves contracts of employment between the two. Rocha v. Missouri Pacific Railroad Company, (D.C.S.D.Tex. Corpus Christi Div.1963), 224 F.Supp. 566; Wilburn v. Missouri-Kansas-Texas R. Co. of Texas, 268 S.W.2d 726 (n. w. h.); Crockett v. Union Terminal Co., 342 S.W.2d 129 (n. w. h.). Accordingly we must hold that the contract or arrangement between appellant and appellee comes under the provisions of the 2-year portion of the statute of limitations. For the above reasons, we believe the trial court acted correctly and within his powers under the law. Appellant's first point is therefore overruled.

■ Appellant's second point charges the court with error in not granting appellant's motion to strike the affidavits of Bryan W. Adams and Marvin Bell. We do not think this point can be sustained. Appellant argues that Mr. Bell's affidavit was improperly admitted on the grounds that it contained matters which were not facts. He illustrates his position by quoting from the affidavit where Mr. Bell said the appellant "expressed his agreement to me orally", etc.; also the statement by Mr. Bell that appellant was "employed orally"; that he (appellant) expressed his agreement to accept employment on certain terms, and that certain terms were made known to him orally and accepted by him orally. It must be remembered that Mr. Bell also states, in his affidavit, that at that time part of his duties consisted of employing personnel for the railroad. Under the circumstances we cannot agree with appellant's position that these statements by Mr. Bell were mere conclusions. In view of the nature of the duties of Mr. Bell and attendant circumstances, we consider these statements to be statements of fact relating to the details and circumstances under which Mr. Bell in his capacity granted employment to appellant.

We have examined the affidavit of Mr. Bryan W. Adams, and have grave doubts as to its admissibility or usefulness. It does not add or detract from the case and can, and we think should, be disregarded.

Its admission does not, in our opinion, constitute reversible error. Appellant's second point of error is therefore overruled.

For the above reasons we believe the trial court was correct in its ruling, and appellant's two points of error having been overruled, the decision of the trial court is in all things affirmed.