LAWRENCE GEALON, Plaintiff-Appellant, *v.* FRANCIS KEALA, Chief of Police, Honolulu Police Department, City and County of Honolulu, State of Hawaii, and HARRY BORANIAN, Director of Civil Service, Department of Civil Service, City and County of Honolulu, State of Hawaii, Defendants-Appellees

NO. 6156

MARCH 8, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
AND RETIRED JUSTICE KOBAYASHI
ASSIGNED BY REASON OF VACANCY*

---

* Justice Kidwell, who heard oral argument in this case, retired from the court on February 28, 1979. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

514

OPINION OF THE COURT BY KOBAYASHI, J.

Appellant Lawrence Gealon brings this appeal from a summary judgment granted to appellees Francis Keala and Harry Boranian by the circuit court of the first circuit. We affirm.

## ISSUES

I. Whether the filing of appellant's complaint in circuit court was timely under Hawaii Rules of Civil Procedure (H.R.C.P.), Rule 72(b).

II. Whether the filing of appellant's grievance under Step 1 of the grievance procedure set forth in Article 32 of the collective bargaining agreement was timely.

A. Whether the twenty-day period began to run when appellant received notice of dismissal or when the dismissal became effective.

B. Whether "twenty days" means twenty calendar days or twenty working days.

III. Whether Article 32, Step 4, paragraph g, which extends the period for filing a grievance under Step 1, is applicable to the instant case.

IV. Whether appellant has shown that appellees' actions were "clearly erroneous" or "arbitrary and capricious" under Hawaii Revised Statutes (HRS) § 91-14(g).

## STATEMENT OF THE CASE

Appellant filed a complaint in circuit court. The complaint was an appeal from the administrative decisions below and requested that appellant be reinstated with full back pay or that the case be remanded for further proceedings on the merits.

Appellees filed a motion for summary judgment and a memorandum in support of the motion, stating, in essence that there is no genuine issue as to any material fact and that appellees are entitled to judgment as a matter of law.

After a hearing on appellees' motion for summary judgment, the circuit court granted the motion.

## STATEMENT OF FACTS

Appellant Lawrence Gealon was a police officer with the Honolulu Police Department, City and County of Honolulu.

Appellee Francis Keala is the Chief of Police, Honolulu Police Department, and appellee Harry Boranian is the Director of Civil Service, Department of Civil Service, City and County of Honolulu.

On June 8, 1975, appellant received a letter from appellee Keala, dated June 5, 1975, informing appellant that he was being suspended immediately and dismissed from the Police Department, effective in ten days from receipt of the letter.

A collective bargaining agreement between the City and County of Honolulu (hereinafter the City) and the State of Hawaii Organization of Police Officers (hereinafter the Union (SHOPO) ), of which the appellant was a member, was in

effect from July 1, 1973 to June 30, 1976.

During the week of June 23, 1975, upon inquiry made by appellant's attorney, the attorney was informed by Major Naylon of the Honolulu Police Department that the twenty-day period within which to file the grievance under Step 1 of the grievance procedure set forth in Article 32 of the collective bargaining agreement[1] meant twenty "working days".

---

[1] Article 32 sets forth the grievance procedure as follows:

A. Employee Grievances which arise out of alleged violation, misinterpretation or misapplication of this Agreement shall be resolved in accordance with provisions set forth herein.

B. Definition of a Grievance: The term "grievance" as used in this Agreement shall mean a complaint filed by a bargaining unit employee, or by the Union, on an employee's behalf alleging a violation, misinterpretation or misapplication of a specific provision of this Agreement occurring after its effective date. All grievances as described above shall be processed in accordance with the provisions contained in this section.

C. An individual employee may process his grievance and have the grievance heard without intervention by the Union. The Union shall be informed of the time and place of any formal grievance meeting in order that the Union may be present.

. . . .

F. Grievances shall be processed in accordance with the following procedures; provided that, whenever a step of the grievance procedure is not applicable to a jurisdiction (because a particular level in the hierarchy of management does not exist in the jurisdiction), the grievance shall be presented at the next step.

A grievance shall, whenever possible, be discussed and settled informally between the grievant and his immediate supervisor. The grievant may be assisted at his request by a Union steward or Union representative. There shall be no obligation by the Employer to consider any grievance not filed within the specified time limit stated in each step unless extended by mutual consent.

Any information in the possession of the Police Department, which is relevant to the grievance, shall be presented to the grieving party within three (3) working days of the grieving party's request for such information.

Step 1. If the grievance is not satisfactorily settled on an informal basis, the grieving party may institute a formal grievance by setting forth in writing on a form provided by the Employer the nature of the complaint, the specific term or provision of the Agreement allegedly violated, misinterpreted, or misapplied and the remedy sought.

The grievance shall be presented to the division head or his designee in writing within twenty (20) days after the occurrence of the alleged violation, or if it concerns an alleged continuing violation, then it must be filed within twenty (20) days after the alleged violation first became known or should have become known to the grieving party.

After the presentation of the grievance, the grieving party and the Union representative shall be offered an opportunity to meet with the division head or his designee in an attempt to settle the grievance. The decision of the division

On or about June 30, 1975, appellant's attorney spoke with Major Jones of the Honolulu Police Department to inquire as to the grievance forms and was informed at that time that the twenty days meant twenty "consecutive days," or

---

head or his designee shall be in writing and be transmitted to the grieving party within ten (10) days after receipt of the grievance unless extended by mutual consent.

Step 2. If the grievance is not satisfactorily settled at Step 1, the grieving party may file a letter of appeal specifying the reasons for the appeal with the department or agency head or his designee within ten (10) days after the receipt of the decision of Step 1.

No grievance, allegation, nor charges by the Employer or Union other than those presented in Step 1 shall be considered in Step 2 or any subsequent steps, except as provided by paragraph D, above.

After the presentation of the grievance, the grieving party and the Union representative shall be offered an opportunity to meet with the department or agency head or his designee in an attempt to settle the grievance.

The decision of the department or agency head or his designee shall be in writing and shall be transmitted to the grieving party within ten (10) days after receipt of the grievance unless extended by mutual consent.

Step 3. If the matter is not satisfactorily settled at Step 2, the grieving party may file a letter of appeal specifying the reasons for the appeal with the Employer or his representative within ten (10) days after the receipt of the decision in Step 2.

If a representative is designated by the Employer, the name of such person shall be provided to the grieving party.

After the presentation of the grievance, the grieving party and the Union representative shall be offered an opportunity to meet with the Employer or his representative in an attempt to settle the grievance.

The decision of the Employer or his representative shall be in writing and shall be transmitted to the grieving party within ten (10) days after receipt of the grievance unless extended by mutual consent.

If the grievance is not satisfactorily settled at Step 3, the Union may exercise its right to arbitrate the grievance.

Step 4. Arbitration.

a. If the matter is not satisfactorily settled at Step 3, and the Union desires to proceed with arbitration, it shall within twenty (20) days of receipt of the decision rendered at Step 3, serve written notice on the Employer or his representative of his desire to arbitrate.

. . . . .

g. Any grievance except those relating to discharge, demotion, or transfer occurring during the period between the termination date of this Agreement and the effective date of a new Agreement shall not be arbitrable except by mutual agreement.

Notwithstanding any provision herein, the limitations on time set forth in Step 1 through Step 3, inclusive, shall be extended for a period not to exceed ten (10) days in the interest of the Employee or Employer upon presentation of a reasonable explanation for said delay.

calendar days, rather than "working days".

On July 1, 1975, appellant filed a grievance with Major Roy Kaaa of the Honolulu Police Department[2] requesting that he be reinstated with full back pay. Major Kaaa denied appellant's grievance on the ground that it was not filed within the prescribed time limits.

By letter dated July 14, 1975, appellant appealed to appellee Francis Keala, Chief of Police, from the denial of the grievance by Major Kaaa.[3] Chief Keala denied the appeal under Step 2 on the ground that the grievance was not filed within the prescribed Step 1 time limits.

By letter dated August 22, 1975, appellant appealed to appellee Harry Boranian, Director of the Civil Service Commission.[4] On August 28, 1975, appellee Boranian denied the appeal from Chief Keala's decision on the ground that the initial grievance was not filed within the prescribed Step 1 time limits.

## OPINION

In considering the validity of granting summary judgment under H.R.C.P., Rule 56(c), this court must determine whether any genuine issue as to a material fact was raised, and if not raised, whether the moving party was entitled to a judgment as a matter of law. *Technicolor v. Traeger*, 57 Haw. 113, 119, 551 P.2d 163, 168 (1976); *Gum v. Nakamura*, 57 Haw. 39, 42, 549 P.2d 471, 474 (1976); *Aku v. Lewis*, 52 Haw. 366, 378, 477 P.2d 162, 169 (1970). This court has held:

> On review of a summary judgment proceeding, the standard to be applied by this court is identical to that employed by the trial court. [Citation omitted.] This means that ". . . the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determina-

---

[2] Step 1 of the grievance procedure of Art. 32.

[3] Step 2 of the grievance procedure.

[4] Step 3 of the grievance procedure.

tion must be viewed in the light most favorable to the party opposing the motion."
*Technicolor v. Traeger, supra,* 57 Haw. at 118, 551 P.2d at 168; *Gum v. Nakamura,* 57 Haw. at 42-43, 549 P.2d at 474.

Upon consideration of the record, we are of the opinion that no genuine issue as to a material fact was raised. We, therefore, turn to the question of whether appellees were entitled to judgment as a matter of law.

I. WHETHER THE FILING OF APPELLANT'S COMPLAINT IN CIRCUIT COURT WAS TIMELY UNDER H.R.C.P., RULE 72(b).

HRS § 91-14(a) provides as follows for judicial review of a "final decision and order" of an administrative agency:[5]

Any person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law.

HRS § 91-14(b) states that proceedings for such review shall be instituted in circuit court.

H.R.C.P. Rule 72(a) states that where a right of redetermination or review in circuit court is allowed by statute,[6]

any person adversely affected by the decision, order or action of a governmental official or body other than a court, may appeal from such decision, order or action by filing a notice of appeal in the circuit court having jurisdiction of the matter.

H.R.C.P., Rule 72(b), states that notice of appeal shall be filed in circuit court within thirty days after the person desir-

---

[5] HRS § 91-1 defines "agency" as follows:

For the purpose of this chapter [Chapter 91 — Hawaii Administrative Procedure Act]:

(1) "Agency" means each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches.

[6] The statute which allows a right of review herein is HRS § 91-14(a).

ing to appeal is notified of the rendering or entry of the decision or order.[7]

Appellees argue, in effect, that appellee Keala's decision, rendered on July 16, 1975, was the "final decision and order" herein, so that the filing of appellant's complaint in circuit court on September 26, 1975, was outside the thirty-day period prescribed by Rule 72(b).

Appellant argues, in effect, that appellee Boranian's decision, rendered on August 28, 1975, was the "final decision and order" herein, so that the filing of appellant's complaint in circuit court was timely under Rule 72(b).

"Final order" means an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action. *Downing v. Board of Zoning Appeals of Whitley County*, 149 Ind. App. 687, 689, 274 N.E.2d 542, 544 (1971). *See Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970).[8] *But see Ecee, Inc. v. Federal Power Commission*, 526 F.2d 1270, 1273-74 (5th Cir. 1976).

In our opinion, appellee Keala's decision under Step 2 clearly was not a "final decision and order." Appellant did proceed to Step 3 of the grievance procedure, as was his right. *Downing v. Board of Zoning Appeals of Whitley County*, *supra*, 149 Ind. App. at 689, 274 N.E.2d at 544. Since Step 3 was the last step that appellant could take under Article 32,[9]

---

[7] H.R.C.P., Rule 72(b), reads as follows:

The notice of appeal shall be filed in the circuit court within 30 days after the person desiring to appeal is notified of the rendering or entry of the decision or order, or of the action taken, in the manner provided by statute.

[8] In that case, the U.S. Supreme Court stated:

[T]he relevant considerations in determining finality are whether the process of administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether the rights or obligations have been determined or legal consequences will flow from the agency action.

400 U.S. at 71.

[9] Step 4, arbitration, is inapplicable herein, since appellant's grievance was dismissed under Step 1 on procedural grounds.

appellee Boranian's decision of August 28, 1975, was the "final order and decision" herein. Hence, the filing of appellant's complaint in circuit court was without doubt within the thirty-day period prescribed by Rule 72(b).

II.  WHETHER THE FILING OF APPELLANT'S GRIEVANCE UNDER STEP 1 OF THE GRIEVANCE PROCEDURE SET FORTH IN ARTICLE 32 OF THE COLLECTIVE BARGAINING AGREEMENT WAS TIMELY.

A.  Whether the twenty-day period began to run when appellant received notice of dismissal or when dismissal became effective.

Appellant contends that the twenty-day period began to run when the dismissal became effective, on June 29, 1975, ten days after appellant received notice of dismissal.

Appellees contend that the twenty-day period began to run when appellant received notice of dismissal on June 8, 1975.

In the interpretation of a collective bargaining agreement, the first thing to be considered is the language of the agreement. *Kellogg Co. v. NLRB*, 457 F.2d 519, 524 (6th Cir. 1972); *La China v. Dana Corporation-Parish Frame Division*, 433 F.Supp. 430, 437 (E.D. Pa. 1977). In addition, past interpretations and applications, *La China v. Dana Corporation-Parish Frame Division, supra* at 437, and past practices, as part of the common law of the shop,[10] may be considered. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578-79, 581-82 (1960); *Northampton Area Board of Education v. Zehner*, 25 Pa. Commw. Ct. 401, 403, 360 A.2d 793, 795 (1976).

The language in Article 32, "grievance procedure," and Article 13, "discipline,"[11] of the collective bargaining

---

[10] In United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578-79 (1960), the United States Supreme Court said:
The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. [Citations omitted.] . . . It calls into being a new common law--the common law of a particular industry or of a particular plant. . . .

[11] Article 13 provides, in part:
The discipline and/or discharge of regular employees shall be for cause.

agreement does not shed light on the specific issue herein. Neither does the language in any other part of the agreement.

The affidavit of appellee Keala, which is attached to appellees' memorandum in support of their motion for summary judgment, states:

> 8. That it has been the consistent and long-standing policy and practice of the Department to recognize the date an employee receives notification of disciplinary action, which may allegedly constitute a violation of the agreement, as the date an alleged violation became known; hence, any grievance filed under Article 32 must be filed within twenty (20) days of the notification;
>
> 9. That, to his knowledge, such practice is also recognized by SHOPO [the Union].

In opposition to the motion for summary judgment appellant presented no affidavits, depositions, or other relevant evidence in support of his contention that the twenty-day period began to run when the dismissal became effective.

In view of the record before the trial court, we conclude that the twenty-day period began to run on June 8, 1975, when appellant received notice of dismissal.

> B. Whether "twenty days" means twenty calendar days or twenty working days.

The meaning of certain words in a collective bargaining agreement may be determined by referring to other words and phrases in the agreement. *Kellogg Co. v. NLRB, supra* at 524; *Refinery Employees' Union v. Continental Oil Co.*, 160 F.Supp. 723, 731 (W.D.La. 1958). Interpretation of a collective bargaining agreement may also be aided by the use of extrinsic evidence. *Kellogg Co. v. NLRB, supra* at 524; *News Union of Baltimore v. NLRB*, 393 F.2d 673, 678 (D.C. Cir. 1968).

Article 32 of the collective bargaining agreement does not specify whether "twenty days" means calendar days or working days. The collective bargaining agreement does not contain any provision for the interpretation of the word "day".

Within article 32 we find references to "thirty days,"[12]

---

[12] P. 32, Step 4, paragraph e, lines 2, 4.

"twenty days,"[13] "ten days,"[14] and "three *working* days."[15] (Emphasis added). Inasmuch as "working days" is specified only for the three-day period, we are of the opinion that, as of the date the agreement was entered into,[16] all the other time periods with article 32, including "twenty days," refer to calendar days.

A memorandum of understanding, entered into on September 23, 1974, by the City and County of Honolulu and the Union (SHOPO), among other parties, and attached to appellees' motion for summary judgment, states that "Article 32 . . . is amended so that all references to ten (10) days are hereby changed to ten (10) working days."[17] Because the memorandum of understanding changed only the references to "ten days," we are of the opinion that references to "twenty days" continue to mean twenty calendar days. This interpretation is supported by appellee Keala's affidavit.[18]

---

[13] P. 30, Step 1, paragraph 2, lines 2, 5; p. 31, Step 4, paragraph a, line 3.

[14] Pp. 30-33, Steps 1-4.

[15] P. 30, first paragraph at top of page.

[16] June 26, 1973.

[17] The memorandum of understanding provides as follows:

This Memorandum of Understanding made and entered into this 23rd day of September 1974, by and between the State of Hawaii, the City and County of Honolulu, the County of Hawaii, the County of Maui, and the County of Kauai, hereinafter collectively called the Employer and the State of Hawaii Organization of Police Officers (SHOPO), hereinafter called the Union.

It is agreed that Article 32, Grievance Procedure, of the collective bargaining agreement between the Employer and the Union effective as of July 1, 1973, to and including June 30, 1976, is amended so that all references to ten (10) days are hereby changed to ten (10) working days in the following instances:

Page 30, Step 1., paragraph three, line seven.
Page 30, Step 2., paragraph one, line five.
Page 31, paragraph two, lines three and four.
Page 31, Step 3., paragraph one, lines four and five.
Page 31, Step 3., paragraph four, line three.
Page 33, paragraph g., line ten.

[18] Appellee Keala's affidavit states, in part:

10. That the twenty (20) days referred to in Article 32 means twenty calendar days, weekend days inclusive, as clarified by a Memorandum of Agreement, dated September 23, 1974, between the City and County of Honolulu, and others, and SHOPO. . . .;

We, therefore, conclude that the filing of appellant's grievance under Step 1 on July 1, 1975, was untimely.

### III. WHETHER ARTICLE 32, STEP 4, g., OF THE COLLECTIVE BARGAINING AGREEMENT, WHICH EXTENDS THE PERIOD FOR FILING A GRIEVANCE UNDER STEP 1, IS APPLICABLE TO THE INSTANT CASE.

Article 32, Step 4, paragraph g., of the collective bargaining agreement states in pertinent part:

> Notwithstanding any provision herein, the limitations on time set forth in Step 1 through Step 3, inclusive, shall be extended for a period not to exceed ten (10) days in the interest of the Employee or Employer upon presentation of a reasonable explanation for said delay.

Appellant contends that the fact that Officer Naylon told appellant's attorney that "twenty days" meant twenty working days rather than twenty calendar days constitutes a "reasonable explanation for delay."

In *Kelley v. Southern Pacific Co.*, 429 S.W.2d 583 (Tex.Civ.App. 1968), the plaintiff brought an action against his former employer, alleging that the employer had discharged plaintiff wrongfully and without just cause. The court held that the plaintiff had no cause of action because he had failed to file a complaint within the ten-day period specified by the dismissal clause of the collective bargaining agreement between plaintiff's employer and the union of which plaintiff was a member.[19] In response to plaintiff's argument that he did not know of the various ten-day conditions in the agreement, the court said:

> It is obvious that the agreement requires that this [filing within ten days] be done. . . . [W]e cannot hold that such

---

11. That said Memorandum of Agreement changed only references in Article 32 of ten days to ten working days, leaving references to other specified days as calendar days.

[19] The dismissal clause of the collective bargaining agreement provided in pertinent part:

If any porter believes that he has been unjustly disciplined or dismissed, he will have the right to file with the Superintendent within ten days notice of such discharge. . . .

429 S.W.2d at 585.

[Plaintiff's alleged ignorance of the ten-day requirement] is good cause, as an agreement such as this is binding upon both parties regardless of their personal knowledge or ratification. The Union representing appellant was a signatory to the aforesaid collective bargaining agreement. It has been held that a collective bargaining agreement . . . is binding upon the individual employee irrespective of his personal knowledge or ratification.

*Id.* at 586.

In our opinion, based on the basic agreement between the parties, including the memorandum of understanding, the fact that Major Naylon told appellant's attorney that "twenty days" meant twenty working days does not constitute a "reasonable explanation for delay" under Article 32, Step 4, paragraph g. Therefore, the requirement that a grievance be filed under Step 1 within twenty calendar days is binding on appellant. *Kelley v. Southern Pacific Co., supra* at 586.

IV. WHETHER APPELLANT HAS SHOWN THAT APPELLEES' ACTIONS WERE "CLEARLY ERRONEOUS" OR "ARBITRARY AND CAPRICIOUS" UNDER HRS § 91-14(g).

Appellees contend that appellant has not shown under HRS § 91-14(g)[20] that appellees' actions should be reversed or modified because they were "clearly erroneous" or "arbitrary and capricious."

Appellant contends that this court cannot determine whether appellant's claim meets the requirements of § 91-14(g) without first granting appellant a hearing on the merits.

---

[20] HRS § 91-14(g) states:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In view of our conclusions that the filing of appellant's complaint under Step 1 was untimely and that appellant did not present a "reasonable explanation for delay" under Article 32, Step 4, paragraph g., it is clear that appellees' actions were not "clearly erroneous" or "arbitrary and capricious" under § 91-14(g).

We, thus, conclude that the moving parties, appellees herein, were entitled to judgment as a matter of law.

Affirmed.

*Erick T. S. Moon* for plaintiff-appellant.

*Francis M. Nakamoto*, Deputy Corporation Counsel, for defendants-appellees.