MGTC, INC., Petitioner,

v.

PUBLIC SERVICE COMMISSION OF WYOMING, Respondent,

and

Northern Gas Company, Petrolane Wyoming Gas Service, Inc., and the Consumer Representative Staff of the PSC, Intervenors and Respondents.

No. 86–183.

Supreme Court of Wyoming.

April 3, 1987.

James L. Erkel, Los Angeles, Cal., and Richard J. Barrett (argued), of Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for petitioner.

A.G. McClintock, Atty. Gen., Steven R. Shanahan, Sr. Asst. Atty. Gen. (argued), and J.C. DeMers, Asst. Atty. Gen., for Public Service Com'n; Robert C. McHugh and T.J. Carroll, III, (argued), Lakewood, Colo., for Northern Gas Co.

Nicholas G. Kalokathis (argued), of Lathrop & Uchner, Cheyenne, for Petrolane.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Petitioner McCulloch Gas Transmission Company (MGTC) seeks review of a Public Service Commission (Commission) order re-

quiring MGTC to refund to its customers $2,192,942 in overcharges. The Commission's order was based on a finding that MGTC had erroneously calculated the surcharge component of its gas balancing account. The appeal reaches this court through Rule 12.09 certification from the district court.

MGTC contends that the Commission exceeded its jurisdiction and engaged in illegal retroactive ratemaking by ordering MGTC to recalculate its surcharge adjustment and make refunds relating back to the inception of its gas balancing account. The Commission asserts that MGTC's appeal should be dismissed for failure to timely file a petition for review in accordance with Rule 12.04, W.R.A.P.

We hold that MGTC's petition was timely filed, and we affirm the Commission's order.

### FACTS

MGTC is an intrastate natural gas transportation and distribution company subject to the regulatory jurisdiction of the Commission. The company's two largest customers are respondents Northern Gas Company (Northern) and Petrolane Wyoming Gas Service, Inc. (Petrolane). MGTC also sells gas to various farms and ranches along its pipeline in northeastern Wyoming.

In July 1982, the Commission approved MGTC's application for a gas balancing account. The gas balancing account system is a rate adjustment mechanism which allows gas distributors to obtain expedited rate changes based solely on fluctuations in the commodity cost of gas purchased by the utility. The advantage of the system is that it avoids the regulatory lag which accompanies general rate proceedings and thereby contributes to the financial stability of utilities. The Commission describes the operation of the balancing account system in the following terms:

"[The] system accounts for both over and underrecoveries of gas costs in future gas commodity rate applications. The actual cost of gas experienced and the recovery of those costs in rates for the past gas balancing account period are compared with the prior estimates for that period to determine whether there should be an upward or downward adjustment to the current balancing account application. In this way a dollar for dollar recovery of gas costs is assured for the utility and consumers are not overcharged."

When the Commission approved MGTC's gas balancing account application, the method of making adjustments to the account became part of MGTC's tariff.[1]

1. A tariff is a published volume of rate schedules and general terms and conditions under which a product or service will be supplied. 3 American Gas Association, Regulation of the Gas Industry, GL–158 (1981).

Section 2.2 of MGTC's gas balancing account tariff provides:

"*Surcharge Adjustment.* The Surcharge Adjustment is an adjustment amount to the existing tariff rate, which represents the difference between actual gas costs *recovered* in rates and actual gas costs incurred by the Company for a given historic time period.

"The Surcharge Adjustment per Mcf sold shall be determined by dividing the balance in the Balancing Account, defined below, at the end of the latest available month at the time of the computation being made under the provisions of this Section, by the estimated volume of Mcf to be sold during the six (6) months the Surcharge balance is to be amortized.

"Beginning as of the date this Balancing Account Provision becomes effective, seller shall establish and maintain a Balancing Account.

Entries shall be made to this account each month as follows:

"(a) A debit entry equal to the difference between actual purchased gas cost and an amount for the same volume purchased computed at the average purchased gas cost applicable to the Currently Effective Rates, as set forth in each filing made before the Public Service Commission of Wyoming.

"(b) A credit entry equal to the volume of sales made during the month under the rate schedules multiplied by the Surcharge Adjustment reflected in the rates charged during the month.

"(c) If, as a result of any order of the Federal Energy Regulatory Commission which becomes final and no longer subject to judicial review, Seller receives from any of its gas suppliers cash refunds, including interest received, applicable to Seller's sales made under the rate schedules on and after the date this Balancing Account Provision becomes effective, Seller shall allocate the amount of such refunds to sales made under such rate schedules on the basis of the volumes of gas sold

In October 1982, MGTC applied for and received its first gas balancing account rate increase. In June 1983, another gas balancing account rate increase was approved. In September 1983, MGTC filed a third application for a gas balancing account rate increase. While reviewing that application, the Commission became aware that MGTC may have been improperly computing the surcharge adjustment since the inception of its balancing account.

A contested case hearing was held to determine whether MGTC's method of computing the surcharge was consistent with the provisions contained in its gas balancing account tariff. The Commission Consumer Representative Staff, Northern, and Petrolane all participated in the hearing. They contended that in calculating the surcharge adjustment MGTC had not followed § 2.2 of its tariff, which stated that the surcharge adjustment would reflect the difference between actual costs recovered in rates and actual costs incurred by the company. In response, MGTC asserted that although such language did indeed appear in the "preamble" to § 2.2, the remainder of § 2.2 prescribed a specific formula for computing the surcharge adjustment and that MGTC had followed that formula.

On February 8, 1985, the Commission entered an order finding that

> "[t]he first paragraph of Section 2.2 of MGTC's balancing account tariff correctly states the concept as it should be applied and the remainder of Section 2.2 provides ambiguous direction at best. MGTC does not * * * follow the dictates of the first paragraph of Section 2.2. The substantial evidence in this matter * * * shows that the policy of Section 2.2 as stated in its first paragraph should be followed and that MGTC should submit a revised version of Section 2.2 which unambiguously sets forth a surcharge adjustment clause * * *."

The Commission concluded that MGTC's method did not compare actual gas costs recovered in rates with actual gas costs

during the refund period. The allocated amount so determined shall be recorded as a

incurred, and it denied the balancing account rate increase.

MGTC filed a petition for rehearing. On May 10, 1985, the Commission issued an "Order on Petition for Rehearing of MGTC, Inc." which essentially reaffirmed its earlier order. In addition, the May 10th order required MGTC to recalculate its surcharge adjustment from the inception of its balancing account using the method established in the Commission's order of February 8, 1985. After reviewing computations submitted by MGTC and the other parties, the Commission entered an order on October 29, 1985, requiring MGTC to refund $2,192,942 plus interest to its customers by reducing its rates in the amount of $.50/Mcf for a period of one year.

MGTC filed a petition for judicial review of the Commission's October 29th order, contending that the Commission acted outside of its statutory authority and engaged in retroactive ratemaking by ordering the refunds. The Commission filed a motion to dismiss, asserting that MGTC's petition was not timely filed. The district court certified the case to this court.

Before we reach the substantive issues concerning the propriety of the Commission's refund order, we must first address the jurisdictional issue raised by the Commission.

## JURISDICTION

■ The Commission asserts that its order of May 10, 1985, was a final appealable order on the issue of its authority to order the refund and that this appeal should be dismissed because MGTC failed to appeal from that order within 30 days as required by Rule 12.04, W.R.A.P. We disagree.

The proceeding before the Commission was a contested case. Section 16–3–101(b)(ii), W.S.1977. Section 16–3–114(a), W.S.1977, states:

> "Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judi-

credit to Seller's Balancing Account." (Emphasis in original.)

cial review, any person aggrieved or adversely affected in fact by a *final decision of an agency in a contested case*, or by other agency action or inaction, * * is entitled to judicial review in the district court * * *." (Emphasis added.)

Similarly, Rule 12.01, W.R.A.P., provides: "To the extent that judicial review of administrative action by a district court is available, any person who is aggrieved or adversely affected in fact by *a final decision of an agency in a contested case*, or who is aggrieved or adversely affected in fact by any other agency action or inaction * * * may obtain such review as provided in this rule." (Emphasis added.)

The time period for filing a petition for review is set forth in Rule 12.04, W.R.A.P.: "In a contested case, * * * the petition for review shall be filed within thirty (30) days after written, certified notice to all parties of *the final decision of the agency or denial of the petition for a rehearing, or, if a rehearing is held, within thirty (30) days after written, certified notice to all parties of the decision thereon* * * *." (Emphasis added.)

Taken together, these statutes and rules stand for the proposition that in a contested case the thirty-day period for filing a petition for review is triggered only by a *final* decision, denial of petition for rehearing, or rehearing decision.

The Commission's May 10th "Order on Petition for Rehearing of MGTC, Inc." was not a final decision. A final administrative order is one ending the proceedings, leaving nothing further to be accomplished. *Gealon v. Keala*, 60 Hawaii 513, 591 P.2d 621, 626 (1979). If the agency retains the matter for further action, the order is not final. Id.; 73A C.J.S. Public Administrative Law and Procedure § 205, p. 244; 2 Am.Jur.2d Administrative Law § 585, p. 413. In the present case, the Commission clearly retained the matter for further action after entering its order of May 10, 1985. The language of the May 10th order indicates that the Commission was unsure whether a refund would be necessary. The order stated:

"The Commission will require the parties to prepare and support detailed schedules consistent with this order to indicate what refund, *if any*, should be made." (Emphasis added.)

The order further provided:

"1. MGTC shall file with the Commission and serve on the parties within 30 days, gas balancing tariff filings and detailed schedules and workpapers, showing the computation of its gas balancing account consistent with the findings and conclusions noted hereinabove. The schedules and workpapers shall be accompanied by a detailed narrative description of the manner and method of making the required computations.

"2. All other parties shall file comments within 30 days thereafter. The Commission shall then determine whether a further hearing is required.

"3. MGTC and the parties shall also comment, within the schedule noted above, in what time period any refunds should be implemented."

The amount of the refund was not determined until the Commission's order of October 29, 1985. Moreover, the Commission did not specifically deny MGTC's petition for rehearing (filed on March 11, 1985) until it entered the October 29th order. Prior to that time, there was no final order from which MGTC could appeal. The petition for review was timely filed.

## THE REFUND

In this appeal MGTC does not challenge the Commission's findings that an overcharge occurred, nor does it challenge the Commission's quantification of the amount of the overcharge. It only asserts that the Commission exceeded its statutory authority and engaged in retroactive ratemaking when it ordered the company to refund the excess charges to its customers.

■ We have held that the Commission possesses only that authority which is expressly granted by statute or constitution and those implied or incidental powers necessary and proper to carry out its enumerated powers. *Public Service Commission v. Formal Complaint of WWZ Company,*

Wyo., 641 P.2d 183, 186 (1982). In this case we find express statutory authority for the Commission's actions in §§ 37–2–121 and 37–1–102, W.S.1977.

"If upon hearing and investigation, any rate shall be found by the commission to be inadequate or unremunerative, or to be unjust, or unreasonable, or unjustly discriminatory, or unduly preferential or otherwise in any respect in violation of any provision of this act, the commission may fix and order substituted therefor such rate as it shall determine to be just and reasonable and in compliance with the provisions of this act. Such rate so ascertained, determined and fixed by the commission shall be *charged, enforced, collected and observed by the public utility for the period of time fixed by the commission.*" (Emphasis added.) Section 37–2–121, W.S.1977.

"The term 'rate,' when used in this act, shall mean and include, in the plural number, as well as in the singular, every individual or joint rate, classification, fare, toll, charge or other compensation for service rendered or to be rendered by any public utility, and every *rule, regulation, practice, act, requirement or privilege in any way relating to such rate, fare, toll, charge or other compensation, and any schedule or tariff or part of a schedule or tariff thereof.*" (Emphasis added.) Section 37–1–102(a), W.S.1977.

The broad language of § 37–2–121, on its face, allows the Commission to substitute and the public utility to collect—for any period of time—a just and reasonable rate for one found to be unjust or unreasonable. MGTC concedes that § 37–2–121, read literally, might grant authority to order refunds, but contends that the language of the statute must be tempered by the rule against retroactive ratemaking.

The rule against retroactive ratemaking is a generally accepted principle of public utility law which recognizes the prospective nature of utility ratemaking and prohibits regulatory commissions from rolling back rates which have already been approved and have become final. *Pacific Telephone and Telegraph Company v. Public Utilities Commission,* 62 Cal.2d 634, 44 Cal.Rptr. 1, 401 P.2d 353, 364–366 (1965); see also *Mountain Fuel Supply Company v. Public Service Commission of Wyoming,* Wyo., 662 P.2d 878 (1983). The rule is limited to *general* ratemaking proceedings, however, and should not be invoked to prevent adjustments in rates pursuant to automatic rate adjustment mechanisms such as a gas balancing account. *Southern California Edison Company v. Public Utilities Commission,* 20 Cal.3d 813, 144 Cal.Rptr. 905, 576 P.2d 945 (1978). The balancing account system, by its very nature, requires a retrospective analysis to identify past over- and underrecoveries. We hold that the rule against retroactive ratemaking does not prohibit the refunds ordered by the Commission.

We cannot ignore the equities in this case. As one court has observed, "[t]he specter of retroactive ratemaking must not be viewed as a talismanic inhibition against the application of principles based upon equity and common sense." *Roberts v. Narragansett Electric Company,* R.I., 470 A.2d 215, 217 (1984). Equity and common sense dictate that MGTC should not be permitted to reap the windfall of overcharges that it collected by misapplying the provisions of its filed tariff.

The Commission's order is affirmed.