# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 106

APRIL TERM, A.D. 2014

August 19, 2014

MONTANA-DAKOTA UTILITIES, CO.,

Appellant
(Petitioner),

v.

No. S-13-0218

WYOMING PUBLIC SERVICE COMMISSION,

Appellee
(Respondent).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    *Bruce Asay, Associated Legal Group, LLC, Cheyenne, Wyoming.*

*Representing Appellee:*
    *Peter K. Michael, Attorney General; Martin L. Hardsocg, Deputy Attorney General; Michael M. Robinson, Senior Assistant Attorney General; Ryan T. Schelhaas, Senior Assistant Attorney General. Argument by Mr. Robinson.*

*Before BURKE, C.J., and HILL, KITE*, DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Montana-Dakota Utilities Company appeals the district court's affirmation of a decision of the Wyoming Public Service Commission.  MDU contends that the Commission lacked authority to order MDU to make refunds to its customers.  We will affirm the district court's decision.

## *ISSUES*

[¶2]   MDU presents a list of issues:

> 1.     Does the Commission's order constitute retroactive ratemaking, which is contrary to the law?
>
> 2.     Does the Commission's refund order requiring retroactive rates violate the filed rate doctrine?
>
> 3.     If the refund is allowed, does the statute of limitations for contracts limit the refund period?
>
> 4.     As the Commission approved the rates over time, is it equitably estopped from ordering a refund?
>
> 5.     Is the action of the agency arbitrary, capricious and an abuse of discretion and should it be held unlawful and set aside?

The Commission articulates the issue this way:

> Did the Commission correctly conclude that MDU is required to refund all overcharges arising out of the improper calculations and adjustments to its commodity balancing account?

## *FACTS*

[¶3]   MDU provides natural gas to customers in Wyoming.  As a regulated public utility, it must obtain the Commission's approval of the rates it charges customers.  In June of 2009, MDU filed an application to adjust the rates it was charging its customers in order to reflect the higher costs MDU was paying for gas.

[¶4]   The Commission staff, after reviewing MDU's application, reported to the

1

Commission that it had questions about certain calculations MDU used to support its application. The Commission approved MDU's June, 2009, application, but on an interim basis only, subject to further consideration of the questions raised by the staff. The Commission directed MDU "to work with Staff" to help resolve these questions.

[¶5] MDU continued its usual practice of filing monthly applications to adjust its rates in response to fluctuating gas prices. In the course of reviewing these applications, the staff identified additional questions relating to MDU's calculations. The Commission continued approving the applications, but each time, subject to further review and consideration of the staff's accumulating questions.

[¶6] All of the staff's questions were brought before the Commission, pursuant to notice, at a regularly scheduled meeting held on January 13, 2011. The Commission's order following this meeting indicates that many of the staff's questions had already been "addressed or resolved." The two issues remaining for consideration concerned the "interest calculation on over-collected commodity balancing account (CBA) balances," and "the Company's practice of grossing up the return on cycle storage, prepaid demand and prepaid commodity balances for federal income taxes and the Uniform Utility Assessment." MDU acknowledged that some of the questioned calculations were incorrect, but maintained that others were appropriate and consistent with the way such calculations had been performed for many years. While MDU did not agree with all of the changes recommended by the Commission staff, it did not object to making the recommended changes on a prospective basis.

[¶7] MDU did object, however, to the Commission ordering it to make refunds of the amounts it had overcharged its customers in the past because of the calculation errors. Specifically, it argued that the rule against retroactive ratemaking precluded the Commission from ordering MDU to make these refunds. In its written order, the Commission rejected MDU's legal arguments and ordered MDU to remedy past errors in the calculations of certain adjustments by the refunding of monies improperly collected. The written order detailed the various calculation errors, found the time periods during which each erroneous calculation had been used by MDU, and quantified the amount by which MDU had overcharged its customers due to each error. Some of the errors dated back to 1993. The Commission ordered MDU to make refunds to its customers covering the entire time the various calculation errors had occurred. In all, MDU was ordered to refund $346,664 to its customers.

[¶8] MDU filed a petition for review in the district court. It did not challenge the Commission's decision that the calculations should be corrected. It did not dispute the amounts of the refunds ordered. It challenged only the legal authority of the Commission to order refunds. After briefing and oral argument, the district court issued an order affirming the Commission's decision. MDU filed this timely appeal.

## *STANDARD OF REVIEW*

[¶9]    In an appeal from a district court's review of an administrative agency's decision, we "review the case as if it had come directly to us from the administrative agency." *Dutcher v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo. 2010).  Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> > >
> > > (B) Contrary to constitutional right, power, privilege or immunity;
> > >
> > > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> > >
> > > (D) Without observance of procedure required by law; or
> > >
> > > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Although MDU raises several issues, the basic question facing us is whether the

Commission's decision is "not in accordance with law" or "[i]n excess of statutory jurisdiction, authority or limitations." We review questions of law *de novo*. *US West Communications v. Wyoming Public Service Comm'n*, 992 P.2d 1092, 1094 (Wyo. 1999). "If the agency action is in accordance with law, it is affirmed; if not, it is corrected." *Id.* (citing *Parker Land and Cattle Co. v. Wyoming Game and Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo. 1993)).

## *DISCUSSION*

[¶10]   Applications to the Commission for rate changes are of two basic types: a general rate application and a pass-on rate application. *Montana Dakota Utilities Co. v. Public Service Comm'n*, 847 P.2d 978, 988 (Wyo. 1993). "The general rate . . . application traditionally covers all facets of a utility's operations, finances, rate design, and rate of return." *Id.* "In sharp contrast, the pass-on application is narrow in nature and scope, is not as costly, and has as its chief purpose the expeditious passing through of . . . wholesale gas costs." *Id.* at 989. When wholesale costs increase, a utility may submit a pass-on rate application to increase its rates, and conversely, when wholesale costs decrease, a utility may submit a pass-on rate application to reduce its rates.

[¶11]   In 1993, MDU filed a general rate application which the Commission approved. It covered all facets of MDU's operations, and its broad elements such as finances, rate design, and rate of return, have remained essentially unchanged since that time.[1]   In contrast, MDU has filed pass-on rate applications on a nearly monthly basis since 1997. Upon approval by the Commission, these pass-on rate applications have allowed MDU to make rapid adjustments to the rates it charges customers, responding to the variable costs MDU pays to purchase gas.

[¶12]   The case before us now began when the Commission staff raised questions about MDU's calculations in connection with MDU's pass-on rate application filed in June of 2009. The Commission determined that some of MDU's calculations were incorrect. It ordered MDU to change those calculations and to make refunds to its customers to reimburse them for past overcharges caused by the erroneous calculations. MDU challenges the Commission's refund order in this appeal.

[¶13]   In its first issue, MDU claims that the Commission's refund order violates the rule against retroactive ratemaking. This rule is "a generally accepted principle of public utility law which recognizes the prospective nature of utility ratemaking and prohibits regulatory commissions from rolling back rates which have already been approved and have become final." *MGTC, Inc. v. Public Service Comm'n of Wyoming*, 735 P.2d 103,

---

[1] The record indicates that two minor adjustments were made in 1997.

4

107 (Wyo. 1987). "Put simply, the rule against retroactive ratemaking prohibits the Commission from setting future rates to allow a utility to recoup past losses or to refund to consumers excess utility profits." *PacifiCorp v. Public Service Comm'n*, 2004 WY 164, ¶ 35, 103 P.3d 862, 874-75 (Wyo. 2004). MDU argues that the Commission's order requiring it to refund overcharged amounts is, in effect, an order setting future rates so as to refund past excess payments back to its customers. This, MDU contends, is prohibited by the rule against retroactive ratemaking.

[¶14] The Commission contends that the rule against retroactive ratemaking does not apply in this case because it is a pass-on rate application case. It relies on our statement in *MGTC*, 735 P.2d at 107, that the rule against retroactive ratemaking "is limited to **general** ratemaking proceedings, however, and should not be invoked to prevent adjustments in rates pursuant to automatic rate adjustment mechanisms such as a gas balancing account." (Emphasis in original.) Because this is not a general ratemaking proceeding, the Commission asserts that the rule does not prohibit it from ordering MDU to make refunds to its customers.

[¶15] The Commission has correctly quoted our statement in *MGTC*, but that statement must be considered in context. We explained further that "The balancing account system, by its very nature, requires a retrospective analysis to identify past over- and under-recoveries." *Id*. Retrospective analysis is necessary because of the way pass-on rate cases operate. First, the utility estimates what its commodity cost will be for an upcoming period of time, and with Commission approval, sets its rates based on that estimate. Then, at the end of that period of time,

> [t]he actual cost of gas experienced and the recovery of those costs in rates for the past gas balancing account period are compared with the prior estimates for that period to determine whether there should be an upward or downward adjustment to the current balancing account application. In this way a dollar for dollar recovery of gas costs is assured for the utility and consumers are not overcharged.

*Id*. at 104. In a pass-on rate case, rates are adjusted for the future based on what the utility paid for commodities in the past. To do that, retrospective analysis is required.

[¶16] That does not mean, however, that application of the rule against retroactive ratemaking depends on the label attached to the proceeding. The Commission can, and does, consider factors other than commodity costs in pass-on rate application

5

proceedings. In *Montana Dakota*, 847 P.2d at 993, we held that the "PSC may adjust a non-gas component in a pass-on rate increase hearing, provided that PSC adequately notifies the utility of the nature and scope of the hearing."[2] If the Commission can consider factors other than commodity costs in a pass-on rate case, and if the rule against retroactive ratemaking never applies in pass-on rate cases, then the Commission could altogether avoid the rule by raising whatever issue it chooses in a pass-on rate proceeding. The "exception would 'swallow' the rule against retroactive ratemaking. If the PSC had this authority, no utility earnings would be safe from PSC ordered refunds and no utility rate order would ever become final." *Wisconsin Power & Light v. Public Service Commission of Wisconsin*, 511 N.W.2d 291, 295 (Wisc. 1994).

[¶17] MDU's claim that the rule against retroactive ratemaking always prohibits the Commission from ordering refunds reflects an overly rigid application of the rule. The Commission's claim that the rule never applies in a pass-on rate case would render the rule ineffectual. As we have previously observed, "[t]he specter of retroactive ratemaking must not be viewed as a talismanic inhibition against the application of principles based upon equity and common sense." *MGTC*, 735 P.2d at 107.

[¶18] Our decision in *MGTC* provides guidance for the appropriate application of the rule against retroactive ratemaking. In that case, the Commission "became aware that MGTC may have been improperly computing [a] surcharge adjustment [rate]." *MGTC*, 735 P.2d at 105. Accordingly, a "contested case hearing was held to determine whether MGTC's method of computing the surcharge was consistent with the provisions contained in its . . . tariff." *Id*. The Commission found that MGTC had not followed the dictates of its tariff and, as a result, it had overcharged its customers. The Commission ordered the utility to make refunds to its customers. *Id*.

[¶19] On appeal, the utility asserted that "the Commission exceeded its statutory

---

[2] However, we also discouraged the practice of considering other factors in a pass-on proceeding, stating that:

> adjusting non-gas cost factors is incompatible with the nature and purpose of the pass-on procedure. Injecting base rate or non-gas component investigation, presentation, and analysis into the relatively simple and intentionally abbreviated pass-on case runs the serious risk of defeating the chief purpose of the procedure, *viz*., a prompt adjustment so that the utility is not faced with large costs that threaten its very financial survival.

*Montana Dakota*, 847 P.2d at 992.

authority and engaged in retroactive ratemaking when it ordered the company to refund the excess charges to its customers." *Id*. at 106. We rejected that assertion. *Id*. at 107. We held that the Commission had the authority to order the utility to make refunds because the utility had charged rates different from those approved by the Commission. The Commission in *MGTC* was not engaging in prohibited retroactive ratemaking, but rather, properly enforcing the rates it had previously approved. We reach a similar result in this case.

[¶20] The first of the two issues involved in this case concerns "the interest calculation on over-collected commodity balancing account (CBA) balances." MDU used an income tax rate in its calculations that represented a composite of the federal income tax rate and the income tax rates of North Dakota, South Dakota, Montana, and Wyoming. Wyoming has no state income tax. MDU conceded that the use of the composite rate in Wyoming was erroneous. In addition, contrary to a 2003 ruling by the Internal Revenue Service, MDU continued to treat the over-recovery in its balancing account as taxable income. The result of these errors accrued to the benefit of MDU, and it was ordered to refund $21,539.

[¶21] During the Commission's meeting on January 13, 2011, MDU admitted that it was responsible for the calculation errors. It characterized them as "past errors that were not in accordance with what we should have been calculating." The errors were contrary to MDU's approved tariff. Accordingly, the rule against retroactive ratemaking does not preclude the Commission from ordering this refund.

[¶22] The second issue involved "the Company's practice of grossing up the return on cycle storage, prepaid demand and prepaid commodity balances for federal income taxes and the Uniform Utility Assessment." MDU's calculations erroneously incorporated a company ownership structure of 100% equity, when in fact the structure was approximately 57% equity and 43% debt. Again, the result of this error was to MDU's benefit. MDU employed this calculation from 1993 to 2009. The Commission ordered MDU to refund $325,125.

[¶23] MDU does not dispute that its use of the 100% equity ratio in the calculation was incorrect. Further, it concedes that its customers were overcharged $325,125 (including interest) as a result of the error. It seeks to avoid repayment of those overcharges by contending that the erroneous calculation was incorporated into the tariff. MDU's position regarding the error is set forth in an exchange between MDU representative, Rita Mulkern and the Commission Chairman:

> MS. MULKERN: We also supported the calculation – filed the calculation saying this is how we're going to calculate the return on storage and prepaid demand charges.

7

The Commission reviewed the tariffs, they reviewed the calculations and they approved the tariff, and as part, in our support, we showed this is how we're going to calculate that, and that is how we continued to calculate the return from 1993 until 2009.

CHAIRMAN MINIER: And did the calculation show – the detail of the calculation show that a hundred percent equity was being used?

MS. MULKERN: The detail did not, but since this was the first time that we had done something like that, we provided to staff. Staff would have called and discussed it and asked any questions and answered any questions. That's generally what they do when we give something new to them, when we file something that's new and it has calculations.

CHAIRMAN MINIER: Staff would have. I mean –

MS. MULKERN: I can only assume.

CHAIRMAN MINIER: I mean, my question is pointed for a reason, obviously. You're suggesting that because the – there was a Commission staff at the time and something was filed that was in a sufficient level of detail that the error – what I think is now – everybody agrees is now an error of using 100 percent equity should have been noticed in some respect. I think that's what I'm hearing you [say].

MS. MULKERN: I think I'm saying – or what I am saying is we provided the calculation to the Commission and the Commission staff. Generally speaking, when we make a filing with the Commission, the staff reviews the calculation. If they have any questions, they will either issue data requests or pick up the phone and call for clarification.

Since the Commission approved the tariffs and on the understanding that this is how we're going to calculate it, it's implicit that the staff would have reviewed the calculation. I believe they would have.

CHAIRMAN MINIER:  Right.  But as we sit here today, you don't have anyone that said they talked to the staff to call their attention to this.  You don't have any more than the staff does, any record to show that such a conversation actually occurred.  You don't have anything to show that at the time anyone at the Commission at the staff level or elsewhere was aware of what I'm going to call the error using a hundred percent equity in the calculation.

MS. MULKERN:  I would have assumed that implicitly, the staff would have reviewed the calculation since it was brand-new, not something that we had had before . . . and was out of the ordinary.

CHAIRMAN MINIER:  So the answer is no.  You are making an assumption.

MS. MULKERN:  I'm making an assumption.

The Commission determined that the error had not been specifically approved by the Commission and placed responsibility for the error with MDU.  In its order mandating the refund the Commission stated:

MDU thus acknowledged its calculation of the return on cycle storage, prepaid demand charges and prepaid commodity balances was wrongly based on a 100% equity factor, rather than the actual equity ratio.  Notwithstanding this admitted error which continued over an extended period of time, Mulkern argued that [i] the Commission and Staff failure to identify and inquire into this error at the outset constitutes the Commission's implicit acceptance of this error, and, [ii] therefore precludes subsequent Commission identification, quantification or correction of the error.  This argument lacks merit.  Were we to accept it, we would abrogate our primary responsibility as a utility regulatory agency – that being to uphold the public interest in all of our actions.  An error, whenever and by whomever discovered, must be corrected.  As noted, the Commission and its Staff's failure to identify this error at the outset can be attributed in part, as acknowledged by Mulkern, to the fact that the Company's calculations provided with its PGA filings beginning in 1993 were not sufficiently detailed in scope to reflect that the

9

Company's calculation of its return was based on the use of an erroneous 100% equity factor.

Ultimately, the Commission rejected MDU's argument that the rule against retroactive ratemaking precluded a refund order. It made this determination based upon its conclusion that "the rule against retroactive ratemaking is not available to the Company in the Multiple Dockets as they are not general ratemaking applications but are, in fact, automatic rate adjustment mechanism filings."

[¶24] We agree with the Commission's conclusion, but on different grounds. As we have previously discussed, in an appropriate case, the rule against retroactive ratemaking can preclude a refund order in a pass-on rate application proceeding. This, however, is not such a case.

[¶25] A major purpose of the rule against retroactive ratemaking is promoting economic efficiency.

> [T]he rule against retroactive ratemaking encourages efficiency because the utility will endeavor to increase profits under the approved rate. If the utility knows that it can recoup past losses retroactively or that ratepayers can obtain refunds of excess profits, it will have little or no incentive to operate efficiently.

Stefan H. Krieger, *The Ghost of Regulation Past: Current Applications of the Rule Against Retroactive Ratemaking in Public Utility Proceedings*, 1991 U. Ill. L. Rev. 983, 1042 (footnote omitted). *See also Southern California Edison Co. v. Public Utilities Comm'n*, 576 P.2d 945, 958 (Cal. 1978) (footnote omitted):

> The rule against retroactive ratemaking serves to encourage efficiency because the utility will strive to hold down costs so as to increase profits under the established rate. Permitting retroactive ratemaking would shift the risk of error in estimating costs and revenues from the utility to the consumer, reducing the utilities' incentive for efficiency.

In this case, the Commission is not ordering MDU to refund excess profits it derived from holding down costs or achieving other economic efficiencies. Instead, MDU seeks to retain the financial benefits it received, at the expense of its customers, based on errors of its own creation. MDU has never asserted that its use of the 100% equity ratio was correct, reasonable, or justified. It failed to show that the Commission had any notice that MDU was relying upon an inaccurate equity ratio or that the Commission implicitly

sanctioned that error when it approved MDU's tariff. MDU cannot rely on the finality of its rates when its calculation error was not shown in its filing, and it could "only assume" that Commission staff would have requested more detail. We have previously recognized that "[t]he specter of retroactive ratemaking must not be viewed as a talismanic inhibition against the application of principles based upon equity and common sense." *MGTC*, 735 P.2d at 107. To apply the rule against retroactive ratemaking in these circumstances would be contrary to the principles of "equity and common sense" with which the rule must be applied. *Id*. Therefore, we hold that the refund order does not violate the rule against retroactive ratemaking.

[¶26] In its second issue, MDU asserts that the Commission's refund order violates the filed rate doctrine. MDU characterizes this doctrine as providing that "once a rate is authorized by the Commission it is the only rate that can be charged." The Commission asserts that the filed rate doctrine is codified in Wyo. Stat. Ann. § 37-3-102:

> No public utility shall directly or indirectly, by any device whatsoever, or in anywise, charge, demand, collect or receive from any person a greater or less or different compensation for any service rendered or to be rendered by such public utility than that prescribed in the schedules of such public utility then filed and published in the manner provided in this act, nor shall any person receive or accept any service from a public utility for a compensation greater, less or in any way different from that prescribed in such schedules.

We have said that, pursuant to this statute, "a public utility may charge its rates only as set forth in new tariffs and schedules as filed with the PSC." *Northern Utilities v. Public Service Comm'n*, 617 P.2d 1079, 1084 (Wyo. 1980). *See also US West Communications v. Wyoming Public Service Comm'n*, 907 P.2d 343, 348 (Wyo. 1995).

[¶27] We have already concluded that the Commission had the authority to order these refunds because MDU's calculations were not in accordance with the approved tariff. The Commission is not ordering MDU to charge unapproved rates. Rather, it is requiring MDU to conform, belatedly, to the approved rates. That is entirely consistent with the filed rate doctrine's mandate that the utility can charge only the rates authorized by the Commission. The Commission has not violated the filed rate doctrine in this case.

[¶28] In its third issue, MDU relies on Wyo. Stat. Ann. § 1-3-105(a)(i), which provides that an action upon a written contract "can only be brought" within ten years after the cause of action accrues. While acknowledging that there is no contract between MDU and the Commission, it claims that a tariff is "analogous to a contract," and asserts that we should apply this statute of limitations to preclude the Commission from ordering

11

refunds dating back more than ten years.

[¶29] Statutes of limitation generally may not be invoked against the State. *Laramie County School Dist. No. 1 v. Muir*, 808 P.2d 797, 800-01 (Wyo. 1991). A governmental entity such as the Commission is not subject to a statute of limitations unless it is shown that the legislature has expressly so stated, or that the statute includes the governmental entity by necessary implication. *Id.* at 801. MDU has made no such showing.

[¶30] In its fourth issue, MDU contends that, because the Commission previously approved the rates charged by MDU, it is equitably estopped from ordering a refund. However, equitable estoppel generally does not apply against governmental entities. *Thompson v. Board of County Comm'rs*, 2001 WY 108, ¶ 12, 34 P.3d 278, 281-82 (Wyo. 2001). In order to overcome this general rule, the party asserting equitable estoppel must demonstrate that the governmental entity engaged in "authorized affirmative misconduct." *Knori v. State ex rel. Dept. of Health, Office of Medicaid*, 2005 WY 48, ¶ 11, 109 P.3d 905, 909 (Wyo. 2005). MDU failed to address the question of whether the Commission had engaged in authorized affirmative misconduct.

[¶31] As its final issue, MDU asserts that the Commission's decision was arbitrary, capricious, an abuse of discretion, and unlawful. MDU uses this issue mainly to reiterate and highlight parts of its earlier arguments. We have rejected those earlier arguments, and this issue raises no new questions for us to consider.

[¶32] Affirmed.