# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 94

APRIL TERM, A.D. 2024

August 30, 2024

POWDER RIVER BASIN RESOURCE
COUNCIL and the WYOMING
OUTDOOR COUNSEL,

Appellants
(Petitioners),

v.

WYOMING PUBLIC SERVICE
COMMISSION,

Appellee
(Respondent),

and

HIGH PLAINS POWER,

Appellee
(Respondent/Intervenor).

S-23-0276

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*
Claire Deuter,* Shannon Anderson, Powder River Basin Resource Council, Sheridan, Wyoming. Argument by Ms. Deuter and Ms. Anderson.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Brandi L. Monger, Deputy Attorney General; Karl D. Anderson, Supervising Attorney General; James B. Peters, Senior Assistant Attorney General, Cheyenne, Wyoming. Argument by Mr. Peters.

*Representing Respondent/Intervenor:*

Henry F. Bailey Jr., Ronald J. Lopez, Bailey Stock Harmon Cottam Lopez LLP, Cheyenne, Wyoming. Argument by Mr. Bailey.

***Before FOX, C.J., and, BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.***

***BOOMGAARDEN, J., delivers the opinion of the Court; GRAY, J., files a specially concurring opinion with which FOX, C.J., joins.***

\* An Order Allowing Withdrawal of Counsel was entered on May 30, 2024.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]  Powder River Basin Resource Council and Wyoming Outdoor Council (collectively, PRBRC) appeal the Wyoming Public Service Commission's (PSC) approval of a tariff revision which allows High Plains Power (High Plains) to compensate its "customer-generators" who generate electricity through small net metering facilities at an avoided cost rate which is lower than the value of the monthly credit they were used to receiving.[1]  Because the PSC misinterpreted the relevant statute and failed to perform its ratemaking function when considering the proposed tariff revision, we reverse.

### ISSUE

[¶2]  The dispositive issue is whether the PSC's approval of High Plains' proposed tariff revision was in accordance with law and supported by substantial evidence.

### FACTS

[¶3]  High Plains is a cooperatively owned distribution utility serving customers over approximately 12,500 square miles of central Wyoming, primarily in rural areas.  High Plains buys its energy at a wholesale price from High Plains Generation & Transmission and then distributes electricity to its members.  Ninety-four of those members are "customer-generators" who generate electricity through small systems on their property and, using net metering, contribute their excess energy to High Plains.  *See* Wyo. Stat. Ann. § 37-16-101(a)(ii) (2023) (defining "customer-generator").

[¶4]  In August 2022, High Plains filed an application with the PSC to revise its tariff. The proposed revisions included a variety of rate and service condition changes, including changes to the monthly rate at which High Plains would compensate its net metering customer-generators for the energy they contribute to High Plains.  That particular revision submitted in red-line format provided:

> If the electric~~ality~~ energy supplied by the member/owner-generator exceeds that supplied by the Cooperative, the member/owner shall be billed for the appropriate billing period ~~monthly~~ charges and ~~shall be credited for such net energy with the kilowatt hour credit appearing on the bill for the following~~

---

[1] High Plains asserts that Appellants lack standing to bring this appeal because they are two non-profit organizations and not direct members of High Plains.  Private organizations can establish standing in administrative appeals on their own or through the rights of their members. *N. Laramie Range Found. v. Converse Cnty. Bd. of Cnty. Comm'rs*, 2012 WY 158, ¶ 29, 290 P.3d 1063, 1074–75 (Wyo. 2012) (citations omitted).  Appellants established their standing through the rights of their customer-generator members at the outset of their intervention. *See* PSC Rules, Ch. 1, § 3(a)(xxxiii) (defining "intervenor").

month. the Cooperative will compensate the member/owner for any excess energy produced as follows:

**The rate credited for electricity shall be the Cooperative's avoided cost,** which can be found on the Cooperative's Schedule of Fees, Allowances, and Supplemental rate tariff sheet. Said payment for the excess electricity generated shall be calculated and reflected as a dollar and cents credit on the bill for the following billing period.

If a credit balance exists at the end of the year, the Cooperative shall issue payment of the same. A credit reflected on the member/owner's account at year-end will not be carried forward.

(emphasis added). Put simply, High Plains wanted to switch to the monthly compensation option provided by statute and proposed to compensate customer-generators for excess kilowatt-hours produced at its avoided cost, or wholesale, rate. As indicated above, the avoided cost rate compensation would be reflected in dollars and cents on the customer-generator's bill the following billing period. High Plains had previously credited its customer-generators each month for any excess kilowatt-hours they produced. Credits were shown as kilowatt-hours, not dollars and cents, but because those credits reduced the number of kilowatt-hours the utility billed the customer the next month, the value of the credits equaled the utility's retail rate. Appellants timely intervened in the proceedings to oppose the requested change.

[¶5]    The PSC set this matter for a hearing to consider High Plains' application to "update its net metering rate and policies," with the unrelated proposed tariff revisions to be heard separately. The hearing occurred on May 8, 2023. Both parties and the PSC staff pre-filed their exhibits, testimony, and cross-examination, and then presented live testimony summarizing the pre-filed materials and allowing for additional cross-examination and questions from the Commissioners. The PSC also accepted written public comments.

[¶6]    The PSC deliberated publicly over two days and approved the proposed tariff revision on a two-to-one vote, with Chairman Throne dissenting. PRBRC petitioned the district court for review. The district court certified this matter for our consideration under Wyoming Rule of Appellate Procedure 12.09, and we accepted the certified case.

## *STANDARD OF REVIEW*

[¶7]    We review agency decisions under Wyoming Administrative Procedure Act standards which, in pertinent part, require us to set aside agency actions that are "not in accordance with law" or are "[u]nsupported by substantial evidence in a case reviewed on

the record of an agency hearing provided by statute." Wyo. Stat. Ann. § 16-3-114(c)(ii)(A), (E) (2023); *Union Tel. Co. v. Wyoming Pub. Serv. Comm'n*, 2022 WY 55, ¶ 32, 508 P.3d 1078, 1090 (Wyo. 2022). The substantial evidence standard applies to evidentiary findings after contested case proceedings, but we review conclusions of law de novo. Wyo. Stat. Ann. § 16-3-114(c); *Bressler v. State ex rel. Dep't of Workforce Servs.*, 2023 WY 94, ¶ 13, 536 P.3d 224, 228 (Wyo. 2023) (citation omitted); *Union Tel. Co.*, 2022 WY 55, ¶ 33, 508 P.3d at 1090–91 (citations omitted); *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 118, ¶ 11, 216 P.3d 1128, 1132 (Wyo. 2009) ("Absent evidentiary dispute, the standard of review for contested case hearings is simply stated as whether an agency's conclusions are in accordance with the law." (citation omitted)). Applying this standard, we afford no deference to the agency's determinations of law and will correct any error the agency made in either interpreting or applying the law. *Jacobs*, 2009 WY 118, ¶ 11, 216 P.3d at 1132 (citation omitted).

## DISCUSSION

[¶8]   We have not previously interpreted Wyoming's net metering statutes or considered the methods by which electric utilities credit or compensate customer-generators for energy they contribute to the utility. *See* Wyo. Stat. Ann. §§ 37-16-101 to -104. Statutory definitions provide the context for this dispute and explain the mechanics of net metering systems.

[¶9]   For context, we consider what constitutes a "tariff" and a "rate." A tariff is a PSC order that sets the unit rates (e.g., the price per kilowatt-hour) a utility may charge its customers and other related conditions of service, inclusive of the terms and conditions for service to net metering customers. *See Tri-State Generation & Transmission Ass'n. v. Wyoming Pub. Serv. Comm'n*, 735 P.2d 718, 721 (Wyo. 1987) (discussing the requirement that service regulation, defined as "every rule, regulation, practice, act or requirement in any way relating to the service or facilities of a public utility" under Wyo. Stat. Ann. § 37-2-102(b), is part of a utility's "rate," must be included in a proposed tariff, and requires a ratemaking proceeding under Wyo. Stat. Ann. § 37-2-120); *MGTC, Inc. v. Pub. Serv. Comm'n of Wyo.*, 735 P.2d 103, 104 n.1 (Wyo. 1987) ("A tariff is a published volume of rate schedules and general terms and conditions under which a product or service will be supplied." (quoting 3 American Gas Association, Regulation of the Gas Industry, GL-158 (1981)). *See generally* PSC Rules, Chapter 3, § 23 (identifying various components that a tariff must include). "Rate" is broadly defined at Wyo. Stat. Ann. § 37-1-102(a) as "every individual or joint rate, classification, fare, toll, charge or other compensation for service rendered or to be rendered by any public utility, **and** every rule, regulation, practice, act requirement or privilege in any way relating to such rate, fare, toll charge or other compensation, **and** any schedule or tariff or part of a schedule or tariff thereof." (emphasis added).

4

[¶10]   The term "rate" plainly encompasses more than the approved amount(s) a utility may charge its customers—it also describes "every rule, regulation, practice, act, requirement or privilege in any way relating to such rate . . . **and any schedule or tariff or part of a schedule or tariff thereof.**"[2]   Wyo. Stat. Ann. § 37-1-102(a) (emphasis added); *Tri-State Generation & Transmission Ass'n*, 735 P.2d at 721.  It is no surprise then, that the PSC—without challenge from any of the parties—responded to High Plains' application to "revise its tariff to update its net metering rate" by treating the matter as a ratemaking hearing.  Questions pertaining to approval of the mechanism described in a utility's tariff for  crediting or compensating net metering customers fall squarely within the definition of  "rate" and thus, lie within the PSC's "general and exclusive power to regulate and supervise every public utility within the state," Wyo. Stat. Ann. § 37-2-112, including its obligation, through ratemaking, to ensure all "rates" are "just and reasonable." *Id.* § 37-3-101.  *See generally Tri-State Generation & Transmission Ass'n.*, 735 P.2d at 721 (requiring a ratemaking hearing under Wyo. Stat. Ann. § 37-2-120 prior to changing service regulation or rates); *Great W. Sugar Co. v. Johnson*, 624 P.2d 1184, 1186–90 (Wyo. 1981) (discussing the PSC's role and purpose in ratemaking and its ability to look at factors beyond what is presented by the utility applying for a rate change).

[¶11]   Turning to specific net metering provisions, "net metering" means "measuring the difference between the electricity supplied by an electric utility and the electricity generated by a customer-generator that is fed back to the electric utility over the applicable billing period[.]"   Wyo. Stat. Ann. § 37-16-101(a)(vii).   A "net metering system" is a facility that produces electrical energy via solar, wind, biomass, or hydropower; up to twenty-five kilowatts; on the customer-generator's premises; parallel to an electric utility's transmission and distribution facilities.  *Id.* § 37-16-101(a)(viii).  The system is "intended primarily to offset part or all of the customer-generator's requirements for electricity." *Id.* Electric utilities must make available to customer-generators a meter capable of measuring energy in two directions, i.e., the electricity the customer-generator takes from the utility and the electricity the customer-generator contributes to the utility.  *Id.* § 37-16-102(a)(i). The utility may, at its own expense, install such a meter.  *Id.* § 37-16-102(a)(ii).

[¶12]   Each month, the utility invoices the customer-generator for the metered amount of energy it took from the utility.  *Id.* § 37-16-103(a)(i)–(ii).   If the customer-generator contributed more energy to the utility than it took, then "the customer-generator **shall be credited or compensated for the excess kilowatt-hours generated** during the month with the kilowatt-hour credit or compensation appearing on the bill for the following month for all metered locations of customer-generators supplied by the electric utility." *Id.* § 37-16-103(a)(iii) (emphasis added).   The statute also provides for an annual true up, whereby

---

[2] Pursuant to the "filed rate doctrine," a utility may only charge the rates set in the tariff.  Wyo. Stat. Ann. § 37-3-102; *Montana-Dakota Utils., Co. v. Wyoming Pub. Serv. Comm'n*, 2014 WY 106, ¶ 26, 332 P.3d 1160, 1168 (Wyo. 2014) ("[A] public utility may charge its rates only as set forth in new tariffs and schedules as filed with the PSC." (citation omitted)).

"[a]t the beginning of each calendar year, any remaining unused kilowatt-hour credit accumulated during the previous year shall be sold to the electric utility, at the electric utility's filed avoided cost." *Id.* § 37-16-103(b).

[¶13]   How "credit or compensation" is valued each month is central to this appeal.  In the past, High Plains credited its customer-generators each month for any excess kilowatt-hours they generated.  Because the credit reduced the number of kilowatt-hours the customer generators would be billed, the value of the monthly credit amounted to the utility's retail rate per kilowatt-hour.  At the end of the year, High Plains trued up its customer-generator accounts by paying for all remaining credits at its "filed avoided cost" per kilowatt-hour rate.  "Avoided cost" is a defined term for distribution cooperatives such as High Plains, and High Plains' filed avoided cost is the wholesale price it paid to its supplier.[3]

[¶14]   In its proposed tariff revision, High Plains asked instead to compensate customer-generators each month at the same avoided cost rate it uses for its annual true up.  PRBRC argued that "credit or compensation" under Wyo. Stat. Ann. § 37-16-103(a)(iii) refers to a single value, and that compensation at the avoided cost rate renders Wyo. Stat. Ann. § 37-16-103(b) meaningless.  Relying on the annual true up language in Wyo. Stat. Ann. § 37-16-103(b), the PSC held that the filed avoided cost rate is presumed to be a just and reasonable rate under § 37-16-103(a)(iii).

[¶15]   We review the PSC's decision de novo, applying established rules of statutory interpretation.  We strive "to give effect to the legislature's intent." *Sinclair Wyo. Ref. Co. v. Infrassure, Ltd*, 2021 WY 65, ¶ 12, 486 P.3d 990, 994 (Wyo. 2021) (citation omitted). If the legislature used unambiguous language, we give the statute its plain meaning—to do otherwise we risk invading the province of the legislature and evading legislative intent. *Id.* at ¶ 13, 486 P.3d at 995 (citation omitted).  "Clear and unambiguous" language is wording "reasonable persons would agree as to its meaning." *Id.* at ¶ 12, 486 P.3d at 994 (quoting *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 69, 226 P.3d 889, 916 (Wyo. 2010) and *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1043 (Wyo. 1993)).

---

[3] For some types of utilities, the avoided cost is determined through ratemaking.  Wyo. Stat. Ann. § 37-2-133(c)–(e).  For distribution cooperatives like High Plains, avoided cost is separately defined:

> "Avoided cost" means to the extent that a distribution cooperative is an all-requirements power supply customer of a generation and transmission cooperative or other wholesale power supplier, the distribution cooperative's avoided costs are the generation and transmission cooperative's or wholesale power supplier's avoided cost[.]

*Id.* § 37-2-122(d)(i).  At the time of this tariff amendment, PSC allowed utilities to file changes to their avoided cost without necessarily requiring a ratemaking hearing.

6

[¶16] The net metering statute is unambiguous in that it clearly establishes a monthly credit or compensation accounting, Wyo. Stat. Ann. § 37-16-103(a)(iii), and an annual true up accounting, Wyo. Stat. Ann. § 37-16-103(b). It is equally clear the monthly accounting provision provides utilities with two options—to either credit or compensate for excess kilowatt-hours produced by customer-generators—but it does not equate the two options or specify the monetary value of either option. *Id.* § 37-16-103(a)(iii). In contrast, the annual true up provision clearly specifies that all utilities must pay annual true ups at their filed avoided cost rate. *Id.* § 37-16-103(b).

[¶17] We presume the legislature acts intentionally when it uses particular language in one statute but not in another. *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 10, 50 P.3d 323, 326–27 (Wyo. 2002)). In prescribing the net metering calculation requirements in Wyo. Stat. Ann. § 37-16-103, the legislature used particularized payment language in section 103(b) not found in 103(a).[4] We appreciate the simple appeal and perceived fairness of PRBRC's argument that because their past monthly credits reflected retail rates they also should be compensated at retail rates; however, we are not at liberty to add words to section 103(a) where the legislature remained silent. *Delcon Partners LLC v. Wyoming Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019) (citations omitted); *Int'l Ass'n of Fire Fighters Loc. Union No. 5058 v. Gillette/Wright/Campbell Cnty. Fire Prot. Joint Powers Bd.*, 2018 WY 75, ¶ 33, 421 P.3d 1059, 1067 (Wyo. 2018) ("The omission of words from a statute must be considered intentional on the part of the legislature."); *Wyodak Res. Dev. Corp. v. Wyoming Dep't of Revenue*, 2017 WY 6, ¶ 31, 387 P.3d 725, 733 (Wyo. 2017) ("This Court is not at liberty to add words to a statute that the legislature chose to omit." (citation omitted)).

[¶18] Moreover, contrary to the PSC's approach, nothing in the language of section 103(b) addresses or instructs the calculation of monthly credits or compensation. By their plain language, subsections (a) and (b) pertain to two different accounting circumstances— monthly and annual. To conflate these subsections for the purpose of accepting the annual true up value as a just and reasonable monthly compensation value violates the plain and obvious distinction in the plain language of each provision and, arguably, renders one or the other unnecessary. We must not give a statute a meaning that will nullify its operation

---

[4] Notably, the language in Wyo. Stat. Ann. 37-16-103(a)(iii) that requires "the kilowatt-hour credit or compensation" to appear on the following month's bill uses "kilowatt-hour" as the unit of measurement by which to calculate credit or compensation. Absent a comma after the word "credit" (e.g., "kilowatt-hour credit, or compensation"), "kilowatt-hour" cannot be read to modify only the word "credit" so as to equate credit and compensation values or to prescribe a retail value to both. *See generally* 2A *Sutherland Statutory Construction* § 47:15 (7th ed. 2023 Update) ("Punctuation may be helpful evidence to understand legislative intent or statutory meaning."). We conclude the legislature used the disjunctive term "or" to identify two different but coordinate things, either of which is applicable to the subject situation. *Tietema v. State*, 926 P.2d 952, 954 (Wyo. 1996) (quoting *Olsen Staffing Serv., Inc. v. D.A. Stinger Serv., Inc.* 921 P.2d 596, 600 (Wyo. 1996)).

if it is susceptible of another interpretation. *Sikora v. City of Rawlins*, 2017 WY 55, ¶ 23, 394 P.3d 472, 479 (Wyo. 2017) (citation omitted).

[¶19] The fact that section 103(a)(iii) does not specify the value of monthly credit or compensation does not render that provision ambiguous or inoperable. We construe statutes *in pari materia*—all statutes relating to the same subject or having the same general purpose are to be considered and construed in harmony. *Mountain Cement Co. v. South of Laramie Water & Sewer Dist.*, 2011 WY 81, ¶ 13, 255 P.3d 881, 885 (Wyo. 2011) (citations omitted). Reading the net metering provisions in the context of what constitutes a "rate" and the PSC's obligation, through ratemaking, to ensure all "rates" are "just and reasonable," Wyo. Stat. Ann. 37-3-101, it is clear that by not specifying the value of monthly credits or compensation in Wyo. Stat. Ann. § 37-16-103(a)(iii), the legislature intended for the PSC to determine each monthly value on a tariff-by-tariff basis, through its ratemaking process. *See* Wyo. Stat. Ann. §§ 37-2-112; 37-3-101 to -102 (addressing ratemaking considerations).

[¶20] To set rates, the PSC considers a variety of information prescribed in the ratemaking statutes, Wyo. Stat. Ann. § 37-2-122, but it must give "paramount consideration to the public interest." *PacifiCorp v. Pub. Serv. Comm'n of Wyo.*, 2004 WY 164, ¶ 13, 103 P.3d 862, 867 (Wyo. 2004) (citation omitted). The utility's objectives are secondary. *Mountain Fuel Supply Co. v. Pub. Serv. Comm'n of Wyo.*, 662 P.2d 878, 883 (Wyo. 1983) (citations omitted); *McCulloch Gas Transmission Co. v. Pub. Serv. Comm'n of Wyo.*, 627 P.2d 173, 179 (Wyo. 1981) ("[T]he primary mission of a regulatory body is to protect the consumer, [and] it must 'strive to reach a balance between consumer, producer, and those whose interests fall in between.'" (citation omitted)). The statutes nowhere contemplate a rate the PSC may presume is just and reasonable. To the contrary, the utility company seeking a rate change has the burden to prove its proposed rates are just and reasonable. Wyo. Stat. Ann. § 37-3-106(a).

[¶21] In holding that "[b]ecause of its use for the same purpose, to provide compensation to customer generators for unused kilowatt-hours, as in Wyoming Statute 37-16-103(b), the utility's avoided cost rate **is rightly presumed** fair and just compensation, as a matter of public policy," (emphasis added) the PSC incorrectly conflated the two distinct net metering accounting provisions and inappropriately abdicated its statutorily established ratemaking role. In addition, by presuming that avoided cost was a just and reasonable monthly rate, the PSC improperly excused High Plains from satisfying its evidentiary burden of proof. *See* Wyo. Stat. Ann. § 37-3-106(a).

[¶22] In sum, when reading the statutes *in pari materia*, Title 37 makes clear the PSC is exclusively authorized and uniquely qualified to consider all relevant factors and evidence when ratemaking and the burden lies with High Plains to prove its proposed rate change is just and reasonable. Wyo. Stat. Ann. § 37-3-106(a). In determining whether the proposed rate change is just and reasonable, the PSC may consider, for example, service availability

and reliability, operational expenses, and other system or business values. Wyo. Stat. Ann. § 37-2-122(a). Among these considerations is High Plains' argument that if it must credit or compensate customer-generators at a retail rate instead of the wholesale rate it otherwise would pay for those kilowatt-hours, its other customers will end up subsidizing the customer-generators for those higher energy costs. The PSC also must consider PRBRC members' argument that they invested in net metering systems with the understanding the legislature incentivized them to do so by offering credit or compensation at retail, not lower, rates. The net metering provisions plainly do not address these complexities or competing public policy choices.[5] We must give the statutes their plain meaning—the policy decisions are not ours to make. As we have noted before, ratemaking "is a legislative function delegated to the PSC," thus courts "must refrain from any semblance of rate making." *McCulloch Gas Transmission Co.* 627 P.2d at 179–80.

[¶23] We briefly consider High Plains' and the PSC's secondary arguments that substantial evidence nevertheless supports the PSC's conclusion that the avoided cost rate is just and reasonable. The record belies any notion the PSC decided this matter on the basis of evidence presented. Although the PSC identified the exhibits and testimony, described its regulatory ratemaking structure, and found that the Commission previously approved the same net metering rate revision for three other electrical cooperatives,[6] it made no technical findings or conclusions. Nor did it weigh the competing factual or technical evidence presented. Just as it is beyond our purview to invade the province of the legislature, it also is beyond our purview to invade the province of the ratemaking agency by making such evidentiary determinations sua sponte. *McCulloch Gas Transmission Co.*, 627 P.2d at 179–80. Accordingly, we cannot sustain the PSC's decision on the basis of substantial evidence.

## *CONCLUSION*

[¶24] The PSC erred when it presumed avoided cost to be a just and reasonable rate for monthly compensation under Wyo. Stat. Ann. § 37-16-103(a)(iii). Because the legislature did not specify a value for monthly compensation (or credit), or in any way equate the two monthly accounting options, we conclude it intended for the PSC to perform its ratemaking

---

[5] Adding further complexity uniquely suited to PSC consideration is the fact that under its separately approved tariff revisions, High Plains now has multiple retail rates: a demand rate, a peak rate, an off-peak rate, and one additional rate. Moreover, the Federal Energy Regulatory Commission has noted that "avoided costs have sometimes exceeded retail rates, . . . . and at other times been less than retail rates." *In re MidAmerican Energy Co.*, 94 F.E.R.C. ¶ 61,340, at *6 n. 8 (March 28, 2001) (citations omitted). The PSC is statutorily authorized and should consider all these matters to determine what constitutes just and reasonable net metering compensation under High Plains' tariff.

[6] We understand High Plains' reliance on this precedent. However, those prior tariff revisions cannot support this or any prior PSC decision that is not in accordance with law. The record does not reflect that any of the three other tariff revisions were contested beyond the public comment periods or subjected to judicial review.

9

function to evaluate High Plains' proposed tariff revision. The PSC did not evaluate the parties' evidence or indicate whether the proposed change would serve the public interest when it approved that revision. We therefore reverse.

**GRAY, Justice,** specially concurring, in which **FOX, Chief Justice,** joins.

[¶25]   I concur with the result reached by the majority—the PSC's approval of High Plains' proposal to switch from crediting its net metering customer-generators for their excess monthly generation at the retail rate per kilowatt-hour to compensating them at High Plains' avoided cost rate must be reversed.   I disagree with the majority's conclusion that the amount a public utility is required to credit or compensate a customer-generator under § 37-16-103(a)(iii) for excess monthly generation is subject to the PSC's authority, its conclusion that compensation paid to a net metering customer-generator is a "rate" or "tariff," and its conclusion that § 37-16-103(a)(iii) does not specify the value at which a utility must credit or compensate a customer-generator for excess monthly generation.[7]

[¶26]   The majority concludes the amount a public utility credits or compensates a net metering customer-generator is a "rate" subject to "the PSC's 'general and exclusive power to regulate and supervise every public utility within the state,' Wyo. Stat. Ann. § 37-2-112, including its obligation, through ratemaking, to ensure all 'rates' are 'just and reasonable.'" I agree that the PSC has broad authority in regulating public utilities under Title 37, but we are not dealing with a public utility here.   The net metering statutes apply to "customer-generators," which by definition are not public utilities.  The PSC has no authority over the amount a public utility credits or compensates a net metering customer-generator for excess monthly generation, and the amount a utility credits or compensates a customer-generator is not a "rate."

[¶27]   The PSC is a creature of statute and "has only the power and authority granted to it by the Wyoming Constitution and statutes" and "those implied or incidental powers necessary and proper to carry out [its] enumerated powers." *Pub. Serv. Comm'n v. Formal Complaint of WWZ Co.*, 641 P.2d 183, 186 (Wyo. 1982).  *See also* Wyo. Stat. Ann. §§ 37-2-101(a) (creating the PSC), 37-2-127 (implied powers); *Hayse v. Wyo. Bd. of Coroner Standards*, 2020 WY 4, ¶ 11, 455 P.3d 267, 273 (Wyo. 2020) ("An administrative agency is limited in authority to powers legislatively delegated." (quoting *Disciplinary Matter of Billings*, 2001 WY 81, ¶ 24, 30 P.3d 557, 568 (Wyo. 2001))).   "[T]his court cannot constructively expand statutory powers conferred upon [the PSC] by the legislature, and the statutes which create and delegate authority to [the] PSC must be construed strictly with any reasonable doubt as to the existence of regulatory power resolved against the exercise of such power." *Matter of Mountain States Tel. & Tel. Co.*, 745 P.2d 563, 568 (Wyo. 1987) (citations omitted).

---

[7] As of 2016, 41 states had some form of net metering.  1 Steven Ferrey, *L. of Indep. Power* § 4:28 (2024). The states vary greatly with respect to, *inter alia*, whether net metering is controlled by the legislature or a regulatory commission, their treatment of unused credits, and their reimbursement policies for excess generation.  *Id.*  The resolution of the issues raised in this case turn on Wyoming statutes.

[¶28]   Title 37 gives the PSC the "exclusive power to regulate and supervise *every public utility* within the state in accordance with the provisions of [the Wyoming Public Utilities Act]."  Wyo. Stat. Ann. § 37-2-112 (emphasis added).  Net metering customer-generators are specifically excluded from the definition of "public utility."  Wyo. Stat. Ann. § 37-16-101(b) ("A person acting as a customer-generator under this act . . . shall not be considered a 'public utility' as defined by W.S. 37-1-101.").  The PSC's authority in this matter derives solely from the net metering statutes and under those statutes the PSC's authority is limited to regulating the safety components of customer-generator facilities.  *See* Wyo. Stat. Ann. § 37-16-104(e) ("The commission, after appropriate notice and opportunity for comment, may adopt by regulation additional control and testing requirements for customer-generators that the commission determines are necessary to protect public safety and system reliability.").  Because customer-generators are not "public utilit[ies]" and the PSC's authority over net metering is limited to safety and system reliability, the PSC has no authority to interpret, enforce, or otherwise exercise power or discretion over the credits or compensation paid to customer-generators for excess monthly generation.  *Phillips Petroleum Co. v. Pub. Serv. Comm'n*, 545 P.2d 1167, 1167–68 (Wyo. 1976) (reversing PSC order issuing a certificate of convenience and necessity to natural gas company because PSC had no jurisdiction or supervisory control over company as it was not a "public utility").  *See also Hommrich v. Pa. Pub. Utilities Comm'n*, 231 A.3d 1027, 1037 (Pa. Commw. Ct. 2020), *aff'd sub nom. Hommrich v. Commonwealth*, 664 Pa. 567, 245 A.3d 637 (2021) (recognizing the Pennsylvania Public Utility Commission's (PUC) broad authority to regulate public utilities but determining the PUC had no authority over net metering customer-generators because they were, by statute, excluded from the definition of public utilities, and the PUC's authority over net metering customer-generators was limited to developing "technical and net metering interconnection rules").

[¶29]   Even if we were to ignore the PSC's lack of authority, the amount a utility must pay to a customer-generator for excess monthly generation is not a "rate" subject to the PSC's ratemaking authority.  Among the powers designated by the legislature to the PSC is the responsibility to ensure a public utility's "rates" are "just and reasonable" and consistent with the public interest.  Wyo. Stat. Ann. §§ 37-3-101 through -102.  *See also Sinclair Oil Corp. v. Wyo. Pub. Serv. Comm'n*, 2003 WY 22, ¶ 9, 63 P.3d 887, 893 (Wyo. 2003).  While there is no question the PSC has broad powers with respect to setting "rates," "[t]hat power [has] limitations[.]"  *Mountain States*, 745 P.2d at 568.  An obvious limitation is that the exercise of that power must pertain to a "rate."  Section 37-1-102(a) defines "rate":

> The term "rate" . . . shall mean and include, in the plural number, as well as in the singular, every individual or joint rate, classification, fare, toll, charge or other compensation for service rendered or to be rendered by any public utility, *and* every rule, regulation, practice, act, requirement or privilege in any way relating to such rate, fare, toll, charge or other

12

> compensation, *and* any schedule or tariff or part of a schedule or tariff thereof.

Wyo. Stat. Ann. § 37-1-102(a) (LexisNexis 2023) (emphasis added).

[¶30]  The majority concludes "[t]he term 'rate' plainly encompasses more than the approved amount(s) a utility may charge its customers[.]"  I disagree.  The definition of "rate" is divided into three parts.  First, the definition states a "rate" means "every individual or joint rate, classification, fare, toll, charge or other compensation for *service rendered or to be rendered by any public utility*." (Emphasis added.)  "Rate" indisputably refers to the amount a public utility <u>charges</u> a customer for the services it renders to its customers, including its net metering customer-generators, and not to an amount it remunerates.  Second, a "rate" includes "every rule, regulation, practice, act, requirement or privilege in any way *relating to such rate, fare, toll, charge or other compensation*." (Emphasis added.)  As with the first part, rules, regulations, practices, acts, requirements and privileges specifically relate to the amount a public utility <u>charges</u> a customer for the services it renders.  Third, the definition states "rate" means "any schedule or tariff or part of a schedule or tariff thereof."  In public utilities law, "[a] 'tariff' is ordinarily understood to be a system of *rates and charges*."  64 Am. Jur. 2d *Public Utilities* § 51, at 445 (2022) (emphasis added).  A "schedule" is a list "showing all *rates for every service rendered or to be rendered by it*."  Wyo. Stat. Ann. § 37-3-110 (emphasis added) (requiring every public utility to file schedules of its rates with the PSC).  Both a "tariff" and a "schedule" mean a utility's rates or its <u>charges</u> for services it renders.

[¶31]  Each part of the "rate" definition speaks to the amounts a public utility will <u>collect</u> from its customers for services it renders.  In contrast, § 37-16-103(a)(iii) directs what a utility will <u>credit or pay</u> to a net metering customer-generator for the customer-generator's excess monthly generation.  The amount a utility pays is not a "rate."[8]

[¶32]  The majority determines the legislature intended for the PSC to arrive at the value of the monthly credit or compensation on a tariff-by-tariff basis, through its ratemaking process.  It relies on the segment of the definition of "rate" that refers to "any schedule or tariff or part of a schedule or tariff thereof" and focuses on the term "tariff" to support its conclusion.  The majority's reliance on the term "tariff" to expand the authority of the PSC is misdirected.  As pointed out above, a "tariff" is a PSC-approved schedule of a utility's <u>charges for services</u>.[9]  The majority itself (correctly) defines "tariff" as a "PSC order that

---

[8] As explained *infra*, § 37-16-103(a)(iii) requires a net metering customer-generator to be credited in kilowatt-hours or compensated at the retail rate.  Fundamentally, while the retail rate is a "rate" reviewed and approved by the PSC, the credit or compensation itself is not a "rate" subject to PSC review and approval.

[9] In concluding the legislature intended for the PSC to use ratemaking to arrive at the compensation a utility must pay for excess monthly net metering generation, the majority alludes to the fact that the PSC and High

sets the unit rates (e.g., the price per) a utility *may charge* its customers and other related conditions of service, inclusive of the terms and conditions *for service* to net metering customers." (Emphasis added.) The credit or compensation a customer-generator is entitled to receive for excess monthly generation is not a "tariff" as the utility is <u>not charging</u> for services it renders to the customer but <u>paying</u> the customer for energy produced and contributed to the utility by the customer. *See Sunrise Energy, LLC v. FirstEnergy Corp.*, 148 A.3d 894, 906 (Pa. Commw. Ct. 2016) ("[T]his so-called net metering tariff is the obverse of a true tariff. A tariff sets what the *utility will collect* for its service. The net metering tariff sets forth what the *utility will pay* for electricity." (citation omitted)).

[¶33] The majority then addresses § 37-16-103(a)(iii) which requires an electric utility to credit or compensate a customer-generator for excess monthly kilowatt-hours. The majority concludes § 37-16-103(a)(iii) does not specify the value of either the monthly credits or the monthly compensation. I see it differently. The amount that a utility must pay for a customer-generator's excess monthly electricity has been established by the legislature. Section 37-16-103(a)(iii) plainly requires its net metering customer-generators to be either credited in kilowatt-hours or compensated at the retail rate for their excess monthly generation.

[¶34] Our rules governing statutory interpretation are well-settled:

> When we interpret statutes, our goal is to give effect to the intent of the legislature, and we attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute. Where legislative intent is discernible a court should give effect to the most likely, most reasonable, interpretation of the statute, given its design and purpose.

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection.

*PacifiCorp, Inc. v. Dep't of Revenue, State*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908 (Wyo. 2017) (citations and quotation marks omitted).

---

Plains treated the matter as a "rate" and "tariff." Whatever label the PSC and High Plains assigned to the matter is not controlling as the PSC is not at liberty to act outside its statutory authority. *Pub. Serv. Comm'n*, 641 P.2d at 186. No provision in Title 37 or the net metering statutes expressly or impliedly authorizes the PSC to regulate what a public utility must credit or pay to a customer-generator.

[¶35]   The net metering statutes provide that a "[n]et metering system" is "a facility for the production of electrical energy that . . . [i]s intended primarily to *offset part or all of the customer-generator's requirements for electricity*."   Wyo. Stat. Ann. § 37-16-101(a)(viii)(E) (emphasis added).   Consistent with this stated intent, § 37-16-103(a)(iii) requires a customer-generator to be credited or compensated for excess monthly generation: "If the electricity supplied by the customer-generator exceeds that supplied by the electric utility, the customer-generator ***shall be credited or compensated for the excess kilowatt-hours generated*** during the month ***with the kilowatt-hour credit or compensation*** appearing on the bill for the following month . . . ."  Wyo. Stat. Ann. § 37-16-103(a)(iii) (emphasis added).   The plain meaning of the verb "credit" is to "to enter upon the credit side of an account" and, when used as a noun, it means "the balance in a person's favor in an account."   *Credit*,   Merriam-Webster   Dictionary,   https://www.merriam-webster.com/dictionary/credit (last visited Aug. 26, 2024).   "Compensate" means to "make an appropriate and usually counterbalancing payment to," *Compensate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compensate (last visited Aug. 26, 2024), and "compensation" means "payment, remuneration." *Compensation*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compensation (last visited Aug. 26, 2024).

[¶36]   The plain language of the statute clearly requires any credit to be in kilowatt-hours as the statute requires the "kilowatt-hour credit" to appear on the customer-generator's electric bill.[10]   Those kilowatt-hour credits are then used to offset the customer-generator's consumption.   The credit reduces one-to-one the kilowatt-hours provided by the utility, which are billed at the retail rate.   The practical effect of a monthly credit is to provide in-kind compensation to the customer-generator at the retail rate.   Section 37-16-103(a)(iii) is equally clear that a utility can choose to credit or compensate a customer-generator for excess monthly generation.   As used in the statute, compensation is like a credit intended to offset electric use.   When a utility chooses to compensate, rather than credit, a customer-generator for excess monthly generation, the compensation is the dollar equivalent of the credit, in other words, the retail rate.   The only difference between credit and compensation in the statute is that the former states the offset in kilowatt-hours while the latter states it in dollars.

[¶37]   This plain reading of the statute is supported by Wyo. Stat. Ann. § 37-16-103(b), which allows for an "annual true up" and states: "At the beginning of each calendar year, any remaining unused kilowatt-hour credit accumulated during the previous year shall be

---

[10] The majority states "kilowatt-hour" cannot be read to modify only the word "credit" given the absence of a comma after the word "credit."  That may be true.  *See, e.g.*, *Avihod v. Daystar Dev. Inc.*, No. B167837, 2004 WL 2980296, at *3 (Cal. Ct. App. Dec. 27, 2004) ("an adjective before two nouns or noun phrases modif[ies] both nouns or noun phrases when the nouns are not separated by a comma and are joined by the word 'or'").  However, that "kilowatt-hour" may modify both credit and compensation lends further support to the conclusion that the legislature intended compensation to be the dollar equivalent of the kilowatt-hour credit.

15

sold to the electric utility, at the electric utility's filed avoided cost."  If compensation in § 37-16-103(a)(iii) is not considered the dollar equivalent of the kilowatt-hour credit retail rate, then a customer-generator would never have credits, let alone unused credits, at the end of the year.  This is because the utility would have no incentive to credit a net metering customer-generator for excess monthly generation as it would be free to compensate at a lower rate than the retail rate, as High Plains seeks to do here.  Such interpretation would render § 37-16-103(b) superfluous.  "We do not interpret statutes in a manner which renders them meaningless."  *Flory v. Flory*, 2023 WY 29, ¶ 18, 527 P.3d 250, 256 (Wyo. 2023).  Also pertinent is the legislature's use of the term "sold" in § 37-16-103(b).  "Sold" means "to give up (property) to another for something of value (such as money)."  *Sell*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sell (last visited Aug. 26, 2024).  Unlike "compensate" in § 37-16-103(a)(iii) which indicates a counterbalancing payment equal to the kilowatt-hour credit—a retail rate—the word "sold" does not implicate a value and the legislature necessarily defined the sales price.  The legislature required an "annual true up" to prevent a net metering customer-generator from carrying over credits from one year to the next and, to accomplish this, it required a net metering customer-generator to sell excess credits at the utility's filed avoided cost.

[¶38]  In conclusion, net metering customer-generators are not "public utilities" subject to the PSC's general and exclusive power to regulate and supervise.  Net metering compensation is not subject to the PSC's ratemaking authority, and compensation paid to net metering customer-generators is not a "rate" or a "tariff."  The legislature established that customer-generators will be credited or compensated for excess monthly generation at the retail rate during the year with an "annual true up" where the customer-generator sells unused credits at avoided cost.